# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1649

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | South Dakota. |
| Ruben Peralez, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: December 11, 2007
Filed: May 14, 2008

_____

Before BYE, JOHN R. GIBSON, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Ruben Peralez was charged with one count of possessing a firearm with an obliterated serial number after a South Dakota State Patrol trooper found such a firearm in Peralez's luggage in a van in which Peralez was a passenger. The district court granted Peralez's motion to suppress evidence, including the firearm, concluding the trooper had violated the Fourth Amendment by improperly extending the duration of the traffic stop to enable a drug dog to sniff the exterior of the van. The government appeals. We conclude the traffic stop was improperly extended but the dog sniff was not a result of that improper extension. Thus, we reverse the district court's order granting Peralez's motion to suppress and remand for proceedings consistent with this opinion.

I.

On the afternoon of November 16, 2005, Trooper Mark Schlueter of the South Dakota Highway Patrol was on duty with his police dog, Drake, who is trained in drug detection. Trooper Schlueter noticed a full-sized yellow van traveling slowly southbound on Interstate 29 just south of Sioux Falls. The slowly moving van was pulling a small trailer loaded with two all-terrain vehicles. The trailer did not have a rear license plate. Trooper Schlueter pulled alongside the van to check the van's license plate, but the plate was obscured by a metal bar from the trailer attachment, and Trooper Schlueter was unable to see the plate number. Trooper Schlueter decided to stop the van for violating South Dakota's license plate law, which requires all vehicles to display license plates conspicuously, regardless of vehicle's state of registration. Trooper Schlueter's dash-mounted camera recorded the ensuing traffic stop.

Trooper Schlueter initiated the traffic stop at approximately 2:42 p.m. Trooper Schlueter approached the van and asked the driver, Ruben Salinas, for his identification. Salinas provided Trooper Schlueter with his Texas driver's license. The trooper then requested that Salinas accompany him back to the patrol car. Peralez, who was seated in the front passenger seat of the van, remained in the van while Trooper Schlueter and Salinas went to the patrol car.

Once in the patrol car, Trooper Schlueter and Salinas discussed the licensing requirements for vehicles and trailers. Trooper Schlueter advised Salinas that he must conspicuously display the rear license plate on his van. At approximately 2:45 p.m., Trooper Schlueter told Salinas he would issue a warning ticket to Salinas for the van's obstructed license plate. As Trooper Schlueter began to complete the warning ticket, he asked Salinas general questions about his trip, his family, and his van. Salinas told Trooper Schlueter that he and his passenger were traveling back to Texas after working for a few months on a farm in Minnesota. Trooper Schlueter shifted away

-2-

from general conversation, asking Salinas if he would be willing to answer some questions "about the van" and informing him that he did not have to answer the additional questions. Salinas agreed to answer Trooper Schlueter's questions. At this point, there was "absolutely not" anything about Salinas's actions or comments causing Trooper Schlueter to be concerned that criminal activity was afoot.

Trooper Schlueter engaged Salinas in discussion on topics related to drug trafficking. He asked Salinas if there were drugs or large amounts of cash in the van. He asked if anyone had used drugs in the van recently. Trooper Schlueter drew Salinas's attention to Drake, who was sitting in the rear of the police car, and noted he is a canine handler. Trooper Schlueter asked if there was any reason Drake would indicate to the odor of drugs "when" Drake walked around the van. Salinas said there were no drugs in the car, denied using drugs himself, and said he knew of no reason Drake would alert on the van. As to large sums of money, Salinas said Peralez had $2,800 with him, having recently closed his bank account in Minnesota. When questioned about whether Peralez had a receipt, Salinas said that Peralez usually crumpled up his receipts and threw them away after receiving cash from the bank. Salinas did not know the name of Peralez's bank.

Trooper Schlueter had completed about half of the warning ticket when he left Salinas in the patrol car and walked back to the van to speak with Peralez at approximately 2:53 p.m. The trooper asked Peralez for his identification, which Peralez provided, and proceeded to ask Peralez about illegal drugs and large amounts of cash that might be in the van. Peralez denied there were drugs in the van and stated he had about $2,500 with him. Peralez explained he did not have a receipt, but he showed the trooper his checkbook. Trooper Schlueter asked if Drake would alert to the odor of drugs "when" the drug dog walked around the van, and Peralez said there was no reason the dog would alert. Trooper Schlueter took Peralez's identification and returned to the patrol car.

-3-

After returning to the patrol car, Trooper Schlueter called to check on both men's identification. This routine part of any traffic stop did not occur until ten minutes after the trooper told Salinas he would receive only a warning ticket. Dispatch responded regarding Salinas's license after one minute. Before dispatch responded on Peralez, Trooper Schlueter took Drake out of the patrol car and walked him around the van.

At the driver's side door, Drake indicated he detected the odor of illegal drugs. The dog sniff took about one minute. As a result of the indication, Trooper Schlueter searched the van. The search of the van uncovered a digital scale with marijuana residue, a revolver with its serial number removed, and a box of bullets. Peralez claimed he owned all of these items.

A grand jury indicted Peralez on one count of possessing a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k). Peralez pled not guilty and moved to suppress the evidence found in the van. A United States magistrate judge conducted a hearing on Peralez's motion, at which both Trooper Schlueter and Peralez testified. The government entered a video recording of the stop into evidence. The magistrate judge issued a report and recommendation suggesting the district court grant Peralez's motion. As relevant to this appeal, the magistrate judge concluded the trooper unreasonably prolonged the traffic stop and "[t]he prolonged detention was not de minimis in length under the circumstances of this case nor was the dog sniff within the scope of the purpose for which the traffic stop was made."[1] Thus, the magistrate judge concluded "[t]he unlawful detention taints the dog sniff, and the search based upon the dog sniff." The district court adopted the magistrate judge's

---

[1] The magistrate judge also rejected the government's assertion that Peralez consented to the conversation unrelated to the traffic stop, concluding that "Peralez was not actually free to leave and no reasonable person would have felt free to leave . . . ." The government does not appeal that conclusion.

recommendation and granted Peralez's motion to suppress. This appeal by the government followed.

## II.

We have jurisdiction over this interlocutory appeal of a district court's order granting a motion to suppress evidence. 18 U.S.C. § 3731. We review the district court's findings of fact for clear error, and review de novo whether the search violated the Fourth Amendment. United States v. Morgan, 270 F.3d 625, 630 (8th Cir. 2001). The government argues that the stop was lawful and that any delay was a de minimis intrusion that did not violate Peralez's Fourth Amendment rights. Alternatively, the government asserts that even if the stop was unreasonably prolonged, the delay did not cause the discovery of the contested evidence and therefore suppression was not warranted. In light of the government's arguments, we consider three issues: (1) was the stop lawful at its inception; (2) was the stop unjustifiably prolonged, making the stop inconsistent with the Fourth Amendment; and (3) was any constitutional violation a but-for cause of obtaining the challenged evidence.

## A.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. A traffic stop constitutes a seizure under the Fourth Amendment. See Delaware v. Prouse, 440 U.S. 648, 653 (1979). An officer who observes a violation of the law has probable cause to initiate a traffic stop, and such a stop comports with the Fourth Amendment. Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977) (per curiam). Trooper Schlueter observed an obstructed license plate on the back of the van, a violation of South Dakota law. Trooper Schlueter had probable cause to stop the van. See United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994) (en banc). Thus, this traffic stop was lawful at its inception.

-5-

B.

A constitutionally permissible traffic stop can become unlawful, however, "if it is prolonged beyond the time reasonably required to complete" its purpose. Illinois v. Caballes, 543 U.S. 405, 407 (2005). During a traffic stop, an officer may detain the occupants of the vehicle "while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation." United States v. $404,905.00 in U.S. Currency, 182 F.3d 643, 647 (8th Cir. 1999). The tasks include "asking for the driver's license, the vehicle's registration, as well as inquiring about the occupants' destination, route, and purpose." United States v. Sanchez, 417 F.3d 971, 975 (8th Cir. 2005) (internal quotation omitted). An officer may ask passengers these questions. See United States v. Coney, 456 F.3d 850, 857 (8th Cir. 2006). If complications arise during these routine tasks, the vehicle may reasonably be detained "for a longer duration than when a stop is strictly routine." United States v. Olivera-Mendez, 484 F.3d 505, 510 (8th Cir. 2007). Whether a traffic stop "is reasonable in length is a fact intensive question, and there is no *per se* time limit on all traffic stops." Id.

The video recording from Trooper Schlueter's patrol car provided the district court, and this court, with a clear picture of the timing and circumstances of the traffic stop. The stop lasted for sixteen minutes before Trooper Schlueter got Drake out of the patrol car. Roughly three minutes into the stop, the trooper told Salinas that he would receive a warning ticket for the obstructed license plate. During the remaining thirteen minutes, Trooper Schlueter engaged in what he called a "blended process," interspersing drug interdiction questions with the routine processing of a traffic stop arising from an obstructed license plate. Trooper Schlueter admitted at the suppression hearing that he "ask[ed] questions unrelat[ed] to the stop," and that those questions "prolong[ed] the detention."

-6-

Nothing unusual occurred during the traffic stop that would have warranted a longer-than-typical detention. The trooper determined after three minutes that the driver of the van need only receive a warning ticket for the obstructed license plate. While routine tasks remained after that determination, "[o]nce an officer has decided to permit a routine traffic offender to depart with a ticket, a warning, or an all clear, the Fourth Amendment applies to limit any subsequent detention or search." United States v. Alexander, 448 F.3d 1014, 1016 (8th Cir. 2006). There was nothing unusual or out of place with the van's registration or the driver's documents. Cf. Olivera-Mendez, 484 F.3d at 510 (sorting through conflicting and incomplete information provided about registration and license plate justified longer stop than usual); Sanchez, 417 F.3d at 975 (delay in processing traffic stop caused by driver's evasive answers about his identity and use of false identification). When Trooper Schlueter eventually submitted a license check for Salinas, it took less than a minute for dispatch to respond. The stop was delayed because of the trooper's drug interdiction questioning, not because of anything related to the investigation or processing of the traffic violation.

Our cases recognize two instances when an officer may extend or expand the scope of a traffic stop beyond the original justification for the stop. First, if the encounter becomes consensual, the stop may be extended. See, e.g., Morgan, 270 F.3d at 630 (conversation after the conclusion of traffic stop was consensual, and therefore extension of the stop was not unconstitutional). Second, if the officer develops reasonable suspicion that other criminal activity is afoot, the officer may expand the scope of the encounter to address that suspicion. See, e.g., Sanchez, 417 F.3d at 975 (reasonable suspicion developed during the course of the stop, warranting expansion). We do not face either of those circumstances. The government does not claim on appeal that the drug interdiction questions posed to Peralez or the van's driver occurred during a consensual encounter. Nor does the government contend that Trooper Schlueter had reasonable suspicion that the van's occupants were engaged in illegal activities when the trooper began asking drug interdiction questions. Indeed,

Trooper Schlueter testified at the suppression hearing that he did not have any reason to suspect illegal activity when he shifted the focus of his inquiries. The question presented by the facts of this case is whether Trooper Schlueter's "blended process" of conducting a drug interdiction investigation during the course of a run-of-the-mill traffic stop violated the Fourth Amendment.

In Olivera-Mendez we acknowledged a split among the circuit courts as to whether an officer conducting a traffic stop based upon probable cause violates the Fourth Amendment "by asking a few questions about matters unrelated to the traffic violation, even if this conversation briefly extends the length of the detention." 484 F.3d at 510. Three circuits have found such a brief extension does not constitute a violation, United States v. Alcaraz-Arellano, 441 F.3d 1252, 1259 (10th Cir. 2006); United States v. Burton, 334 F.3d 514, 518-19 (6th Cir. 2003); United States v. Childs, 277 F.3d 947, 951-54 (7th Cir. 2002) (en banc), while one has reached the contrary conclusion, United States v. Pruitt, 174 F.3d 1215, 1220-21 (11th Cir. 1999).

We need not decide whether a brief extension would comport with the Fourth Amendment in the context of a probable-cause stop, because the delay caused by Trooper Schlueter's questions cannot be categorized as brief. The cases where our sister circuits found a brief extension consistent with the Fourth Amendment did not involve as extensive a departure from routine, traffic-related questions as this case. Cf. Alcaraz-Arellano, 441 F.3d at 1259 (off-topic questioning while the officer wrote out a warning ticket did not "appreciably lengthen" the detention); Burton, 334 F.3d at 518-19 ("a handful of questions" about illegal activity not unreasonable); Childs, 277 F.3d at 954 (one question about marijuana did not make seizure unreasonable). Here, Trooper Schlueter engaged in a "blended process" of conducting a routine traffic stop and a drug interdiction investigation. The off-topic questions more than doubled the time Peralez was detained. The video recording of the traffic stop makes clear the questions unrelated to the traffic violation constituted the bulk of the interaction between the trooper and the van's occupants. This was not a brief

extension. The extent and duration of the trooper's focus on non-routine questions prolonged the stop "beyond the time reasonably required" to complete its purpose. Caballes, 543 U.S. at 407. This violated Peralez's Fourth Amendment right to be free from unreasonable seizures.

C.

Our conclusion that the traffic stop was unlawfully extended does not end our inquiry, however. We must determine whether the constitutional violation caused Trooper Schlueter to obtain the challenged evidence. Only if the constitutional violation was "at least a but-for cause of obtaining the evidence" is suppression of evidence the appropriate remedy. Olivera-Mendez, 484 F.3d at 511 (citing Hudson v. Michigan, 547 U.S. 586 (2006), and Segura v. United States, 468 U.S. 796, 815 (1984)). If the extended seizure "enable[d] the dog sniff to occur" suppression is proper. Caballes, 543 U.S. at 408. Here, Trooper Schlueter did not prolong the search to enable a drug detecting dog to arrive on the scene; Drake was available at the outset of the stop. Trooper Schlueter indicated to both the driver and Peralez that he intended to run Drake around the exterior of the van, regardless of the responses to the trooper's expanded inquiries. He asked whether there was any reason Drake would indicate "when" he walked around the van, not "if" he walked around the van. Moreover, nothing in the record indicates that the answers to the questions posed during the unlawful expansion of the traffic stop caused Trooper Schlueter to utilize Drake. The dog sniff was not "the consequence of a constitutional violation." Caballes, 543 U.S. at 408.

Drake's positive indication during the dog sniff, which provided probable cause to search the van, caused the discovery of the evidence the government seeks to use in this prosecution. It took less than a minute for Drake to circle the van and indicate the presence of contraband. This momentary delay, which occurred while Trooper Schlueter was waiting for the response to his inquiries about Peralez's driver's license,

did not unreasonably extend the traffic stop.  See United States v. Martin, 411 F.3d 998, 1002 (8th Cir. 2005) (two-minute delay after conclusion of the traffic stop to conduct a dog sniff not an unreasonable extension); Alexander, 448 F.3d at 1017 (four-minute delay to conduct dog sniff a de minimis intrusion on Fourth Amendment rights).  This delay would have occurred regardless of the Trooper's off-topic questions. Because Peralez's prolonged seizure for questioning about drug trafficking was not a but-for cause of obtaining the evidence, suppression is not warranted.  See Olivera-Mendez, 484 F.3d at 511 (holding, in the alternative, that evidence discovered after a dog sniff should not be suppressed because the dog sniff, and not an earlier arguably unreasonable extension of the traffic stop, caused the discovery of the contraband).

III.

We reverse and remand for proceedings consistent with this opinion.

_____