# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3897

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | *  Appeal from the United States |
| v. | *  District Court for the |
| | *  District of Nebraska. |
| Edgar E. Bracamontes, | * |
| | * |
| Appellant. | * |

_____

Submitted: June 18, 2010
Filed: August 5, 2010

_____

Before WOLLMAN, EBEL,[1] and COLLOTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Edgar Bracamontes pled guilty to possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841, and criminal forfeiture, pursuant to 21 U.S.C. § 853, on the condition that his right to appeal the denial of his motion to suppress be

---

[1]The Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

preserved. The district court[2] sentenced Bracamontes to forty-eight months' imprisonment. Bracamontes appeals the denial of his motion to suppress. We affirm.

I.

At 12:10 p.m., December 30, 2008, Officer Aaron Hanson of the Omaha Police Department initiated a traffic stop of an automobile bearing California license plates that was following the vehicle in front of it too closely, in violation of Nebraska law. The stop was recorded by the patrol vehicle's mounted camera. Hanson approached the vehicle and requested that the driver, Bracamontes, produce a driver's license, vehicle registration, and proof of insurance. Bracamontes was unable to produce a license, but provided a California identification card and registration that showed that the vehicle had been registered recently. Hanson observed a woman and an infant in the back seat and requested that Bracamontes exit the vehicle. After briefly speaking to Bracamontes outside the car, Hanson requested that he sit in the patrol vehicle, which was also being occupied by a drug-detection dog.

After Bracamontes was seated in the front seat of the patrol vehicle, he told Hanson that he had been visiting some cousins in Des Moines for a couple of days and that he was returning to California. Hanson then returned to Bracamontes's vehicle and opened the driver's side door to obtain the vehicle identification number. Hanson spoke to the passenger, Veronica Bracamontes, Bracamontes's wife, who provided her temporary California license and stated that they had been visiting her husband's Aunt Maria for several days, although she did not know where. Hanson returned to the patrol vehicle and radioed dispatch for identification and warrant checks. Hanson further questioned Bracamontes about his travels and Bracamontes explained that they had been visiting cousins in Minneapolis and that he had no aunt there.

_____

[2]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, adopting the report and recommendation of the Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

Dispatch confirmed that Bracamontes did not have a valid license. Hanson told Bracamontes that he was going to give him a courtesy citation for following too closely and operating without a license. After Bracamontes signed the paperwork, Hanson shook hands with him and said, "we are all done." As Bracamontes began exiting the patrol vehicle, Hanson then asked if he could ask him a few more questions. Bracamontes agreed, and Hanson asked him to return to his seat in the patrol vehicle. Responding to Hanson's questions, Bracamontes indicated that he did not have weapons, drugs, or large sums of currency. Hanson noted that Bracamontes became increasingly nervous and that his voice became soft and difficult to discern. Hanson asked whether he could search the vehicle. Bracamontes was hesitant to agree and Hanson asked again, providing additional options, such as searching the car at another location or having Bracamontes's wife and child wait in the patrol vehicle. Bracamontes declined to consent to the search, at which point Hanson informed Bracamontes that he was going to lead the drug-detection dog around the vehicle. As Hanson approached the vehicle to inform Mrs. Bracamontes about what he was doing, Bracamontes beckoned him over and told him that there was use-quantity cocaine between the driver's seat and the center console of the car. Hanson informed Bracamontes of his <u>Miranda</u> rights and awaited the arrival of another officer. Hanson found two baggies containing cocaine and Bracamontes was arrested. The vehicle was moved to the police impound lot, where a search revealed an after-market fabricated compartment, accessed by removing the windshield, which contained more than $68,000 and more than one kilogram of cocaine.

## II.

In reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its application of law *de novo*. <u>United States v. Lopez</u>, 564 F.3d 1001, 1003 (8th Cir. 2009).

Bracamontes argues that the district court erred in concluding that there was reasonable suspicion to expand the traffic stop and that his confession, the narcotics, and the money should have been suppressed. The government responds that Hanson's observations during the traffic stop were sufficient to support a reasonable suspicion of criminal activity and thus justify additional investigation.

"An officer who observes a violation of the law has probable cause to initiate a traffic stop, and such a stop comports with the Fourth Amendment." United States v. Peralez, 526 F.3d 1115, 1119 (8th Cir. 2008) (citing Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977) (per curiam)). The officer may conduct an investigation that is reasonably related in scope to the circumstances that initially justified the stop. United States v. Fuse, 391 F.3d 924, 927 (8th Cir. 2004). Additionally, the officer may ask routine questions such as the destination, route, and purpose of the trip, and whether the officer may search the vehicle. United States v. $404,905.00 in U.S. Currency, 182 F.3d 643, 647 (8th Cir. 1999). The occupants of the vehicle may be detained "while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning." Id. "A constitutionally permissible traffic stop can become unlawful, however, 'if it is prolonged beyond the time reasonably required to complete' its purpose." Peralez, 526 F.3d at 1119 (quoting Illinois v. Caballes, 543 U.S. 405, 407 (2005)).

"To continue to detain a vehicle's occupants after the initial stop is completed, the officer must have been aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." United States v. Shafer, 608 F.3d 1056, 1062 (8th Cir. 2010) (quotation omitted). "Whether an officer has reasonable suspicion to expand the scope of a traffic stop is determined by looking at the totality of the circumstances,

in light of the officer's experience." Id. (quoting United States v. Gill, 513 F.3d 836, 844 (8th Cir. 2008)) (quotation omitted).

Bracamontes does not contest the legality of the initial stop. By the time Hanson had completed the citation, the amount of time otherwise justified by the initial traffic stop had expired. Hanson had reasonable suspicion to expand the scope of the traffic stop, however, because Bracamontes and his wife gave conflicting stories, following which Bracamontes changed his story by saying that the visit had taken place in Minneapolis rather than Des Moines. He also said that he had no aunt in Minneapolis. Bracamontes's statements were internally contradictory and contradicted his wife's account of their journey, thus establishing the requisite reasonable suspicion to detain him for further investigation. See United States v. Pulliam, 265 F.3d 736, 740 (8th Cir. 2001) (holding that reasonable suspicion was established by motorist's and passenger's contradictory accounts); United States v. Edmisten, 208 F.3d 693, 694 (8th Cir. 2000) (passenger's conflicting statements justified motorist's further detention).

We conclude that the totality of the circumstances supported Bracamontes's limited additional detention and that Hanson's additional questions and the deployment of the drug-detection dog did not violate Bracamontes's Fourth Amendment rights.

III.

The judgment is affirmed.

_____