# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-3181

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Mario Riley, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 17, 2012
Filed:  July 13, 2012

_____

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Appellant Mario Riley entered a conditional plea agreement and pled guilty to possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).  The district court sentenced Riley to 120 months imprisonment, followed by eight years of supervised release.  As allowed by his conditional guilty plea, Riley challenges the district court's[1] denial of his motion to suppress.  We affirm.

_____

[1] The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri, adopting the report and recommendations of the Honorable

## I. Background

In the late afternoon of October 17, 2009, Missouri State Highway Patrol Trooper Kelsey Rutledge pulled over a vehicle driven by Riley on Interstate 44 in Lawrence County, Missouri after observing Riley twice cross the center line. Trooper Rutledge contacted Riley at his car and asked for Riley's driver's license and rental agreement. Rutledge then asked Riley to accompany him to his patrol car so that Rutledge could run a records check, and Riley complied.

Once in the patrol car, Trooper Rutledge began to ask Riley questions about his travel itinerary. Riley indicated that he had been driving from the Hard Rock Casino near Tulsa, Oklahoma. Rutledge asked Riley if he had been there very long. Riley responded that he had spent the night there and had left "about, probably about, a couple hours ago, about three hours ago, a couple, about a[n] hour ago, two hours ago." Rutledge later asked what Riley thought of the hotel portion of the Hard Rock. Riley responded that "It was alright, it was cool. It's nice, it's a nice hotel . . . ." Rutledge then asked Riley on what floor he stayed. Riley responded: "Um. Let's see. When I went there, I just played the games, I just stayed, I just stayed there for a little while. I just played the . . . I just stayed a little while." Rutledge again asked what floor Riley stayed on. Riley responded: "Ah, okay. I stayed at the, um, matter of fact, I'm gonna tell you what hotel I stayed in. I stayed in a hotel . . . just like, right outside of that. I forgot the name of . . . I stayed at a hotel, I think I got the hotel receipt right there in the car."

During the course of their exchange, Trooper Rutledge observed that Riley seemed very nervous. Riley's heart rate appeared to be elevated, as Rutledge could see Riley's pulse in Riley's neck and stomach. Riley was also fidgeting, and his

James C. England, United States Magistrate Judge for the Western District of Missouri.

-2-

breathing appeared to be shallow and rapid. When Rutledge asked Riley why he appeared so nervous, Riley indicated he had never been put in the backseat of a police vehicle during a routine traffic stop. Rutledge asked Riley whether he had ever been in trouble before. Riley represented that he had been arrested once for domestic battery. However, Rutledge received information from dispatch that Riley had a criminal history of several drug violations and several felony arrests, including arrests for assaulting law enforcement.

After receiving Riley's criminal history from dispatch, Trooper Rutledge advised Riley that he believed Riley was lying and asked for consent to search his car. When Riley refused, Rutledge requested from dispatch the assistance of a drug detection dog. Neither of the two dog handlers assigned to the area were on duty, so Rutledge called one of the off-duty dog handlers from the area to come to the location of the stop. Rutledge's stop of Riley began at 3:15 p.m. The drug detection dog, accompanied by Corporal Tom Hall, did not arrive until 4:09 p.m. The drug dog twice alerted to the presence of drugs in the trunk. The officers then searched the trunk and found approximately one kilogram of cocaine.

Riley was arrested and charged with possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine. Riley filed a motion to suppress the drug evidence seized from his automobile. The district court denied the motion. Riley entered a conditional plea agreement and pled guilty, preserving his right to pursue this appeal.

## II. Discussion

Riley contends the district court erred in denying his motion to suppress. "We review the district court's findings of fact for clear error, and review de novo whether the search violated the Fourth Amendment." United States v. Peralez, 526 F.3d 1115, 1119 (8th Cir. 2008). "We will affirm the denial of a suppression motion 'unless we

-3-

find that the decision is unsupported by the evidence, based on an erroneous view of the law, or the Court is left with a firm conviction that a mistake has been made.'" United States v. Donnelly, 475 F.3d 946, 951 (8th Cir. 2007) (citation omitted).

Riley claims the evidence found in the trunk of his vehicle should have been suppressed because: (1) there was no probable cause to stop Riley; (2) there was no reasonable suspicion to detain Riley to search his vehicle; (3) Trooper Rutledge's method of questioning amounted to an unreasonable search; (4) the amount of time Riley was delayed for the drug detection dog was unreasonable; and (5) the search exceeded the proper scope of investigation. We address each argument in turn.

A.     There was probable cause to stop Riley.

"A traffic stop constitutes a seizure under the Fourth Amendment. An officer who observes a violation of the law has probable cause to initiate a traffic stop, and such a stop comports with the Fourth Amendment." Peralez, 526 F.3d at 1119 (internal citation omitted).

Riley first contends there is no evidence to support Trooper Rutledge's testimony that Riley was pulled over for weaving across the highway center line. Riley is correct that there is no video evidence to show that he was weaving, as Rutledge acknowledged at the suppression hearing that the camera in his patrol car was not turned on when he first observed Riley's vehicle. However, Rutledge testified that he conducted the initial stop because Riley was weaving. Rutledge's testimony is consistent with the portion of the traffic stop captured on video. The video shows Riley asked: "Did it look like I was swerving?" Rutledge responded: "I didn't know if you were messing with your phone or something or what. I'm not sure. I don't know, maybe you're getting sleepy." Soon after, Riley stated: "Well, I was wondering why you pulled me over." Rutledge responded: "Well, I told you. I told you." The district court was in a position to weigh the credibility of Rutledge's

-4-

testimony, and we find no clear error in the district court's choice to credit Rutledge's account of the events that led to the traffic stop.  See United States v. Mendoza, 677 F.3d 822, 827 (8th Cir. 2012) ("[W]hen the trial judge's credibility determination is based upon 'a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.'" (citation omitted)).

      B.     There was reasonable suspicion to detain Riley in order to search his vehicle.

Riley next contends Trooper Rutledge lacked reasonable suspicion to detain Riley in order to search Riley's vehicle.  "For purposes of constitutional analysis, a traffic stop is characterized as an investigative detention, rather than a custodial arrest.  As such, a traffic stop is governed by the principles of Terry v. Ohio, 392 U.S. 1 (1968)."  United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001) (internal citation omitted).  Our court has previously opined as to the Terry stop analysis:

> Only when an officer develops a reasonable, articulable suspicion that criminal activity is afoot does he have justification for a greater intrusion unrelated to the traffic offense.  This requires that the officer's suspicion be based upon particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.  In evaluating whether a set of facts would give rise to reasonable suspicion, this court must look at the totality of the circumstances and not just each independent fact standing alone.  Furthermore, the court may consider any added meaning that certain conduct might suggest to experienced officers in the field, trained in the observation of criminal activity.

Jones, 269 F.3d at 927 (citations and alteration marks omitted). "While 'reasonable suspicion' must be more than an inchoate 'hunch,' the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." United States v. Fuse, 391 F.3d 924, 929 (8th Cir. 2004).

In the instant case, after Rutledge received Riley's criminal history from dispatch, Rutledge advised Riley that he did not believe that Riley was telling him the truth and asked for consent to search Riley's car. When Riley refused consent and asked why Rutledge would want to search, Rutledge informed Riley that he believed that drugs were in the trunk of the vehicle. Rutledge thus articulated more than a minimal justification for the stop, as he clearly articulated the exact suspicion that caused him to detain Riley.

In its order denying Riley's motion to suppress, the district court determined Trooper Rutledge's suspicion was reasonable. The district court found that Rutledge made several observations during his initial investigation of Riley's traffic violation that supported Rutledge's suspicion that criminal activity was afoot. First, Riley exhibited undue nervousness in the form of a visibly elevated heart rate, shallow breathing, and repetitive gesticulations, such as "wiping his face and scratching his head." Second, Riley gave vague or conflicting answers to simple questions about his itinerary. Finally, Riley misrepresented his criminal history by omitting his drug violations and felony arrests.

Riley argues that his case is analogous to two cases, United States v. Jones, 269 F.3d at 927-29 and United States v. Beck, 140 F.3d 1129, 1137-40 (8th Cir. 1998), where our court determined that a police officer lacked reasonable suspicion to support a Terry stop. In both Jones and Beck, the suspect's nervous demeanor alone was not enough to establish reasonable suspicion. See Jones, 269 F.3d at 929; Beck, 140 F.3d at 1139. In addition, in Jones, the suspect's initial denial of a previous

arrest for theft was not inconsistent with innocent behavior. 269 F.3d at 928. In Beck, there was nothing inherently suspicious about the suspect's explanation that he was traveling through Arkansas to go to an interview in North Carolina because "[u]ntold numbers of Americans move for employment reasons every year." 140 F.3d at 1139.

Riley's case is distinguishable from Jones and Beck when one considers the combination of Riley's nervous condition, his difficulty in answering basic questions about his itinerary, and his failure to be forthright about his criminal history relating to drugs. In Jones, we noted that an inconsistent answer as to a traveler's destination and purpose "casts suspicion and doubt on the nature and legitimacy of the activity being investigated." 269 F.3d at 928. Likewise, in Beck we recognized that reasonable suspicion could derive from "unusual or suspicious travel plans." 140 F.3d at 1139 (citing United States v. Kopp, 45 F.3d 1450, 1453 (10th Cir. 1995) (finding reasonable suspicion was sufficiently based on a combination of suspicious travel plans, inconsistent answers, and nervousness)). Unlike the suspects in Jones and Beck, who stated their purpose and destination without difficulty, Riley was hesitant and gave conflicting answers to basic questions about his itinerary. Cf. United States v. Suitt, 569 F.3d 867, 872 (8th Cir. 2009) ("Although each answer could be innocent when viewed in isolation, the suspicious character of each response was magnified by the evasions that preceded it."). Furthermore, Riley's misrepresentation about his criminal history was different from the suspect in Jones because Riley's history involved drugs, which reasonably added to Trooper Rutledge's suspicions that Riley was trying to hide drug-related activity. See Jones, 269 F.3d at 928; United States v. Gill, 513 F.3d 836, 844 (8th Cir. 2008) (weighing in favor of reasonable suspicion the fact that defendants had prior arrests for drugs and weapons but "[n]either of the defendants answered questions about their criminal records forthrightly").

The reasonable articulable suspicion standard is a fact-specific inquiry based on the totality of the circumstances in a particular case. See United States v. Logan, 362 F.3d 530, 533 (8th Cir. 2004). "[I]n some circumstances the sum may amount to more than its parts." Jones, 269 F.3d at 929. Here, the totality of the circumstances provided a sufficient basis for Trooper Rutledge to form a reasonable, articulable suspicion that Riley was engaged in unlawful activity. The district court did not err in so finding.

C.     Trooper Rutledge's questions did not amount to an unreasonable search.

"The occupants of [a] vehicle may be detained 'while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning.'" United States v. Bracamontes, 614 F.3d 813, 816 (8th Cir. 2010) (citation omitted). To that end, "a reasonable investigation during a traffic stop 'may include asking for the driver's license and registration, requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose.'" United States v. White, 81 F.3d 775, 778 (8th Cir. 1996) (citation omitted). "Asking an off-topic question, such as whether a driver is carrying illegal drugs, during an otherwise lawful traffic stop does not violate the Fourth Amendment." United States v. Long, 532 F.3d 791, 795 (8th Cir. 2008). Likewise, "[a]sking for consent to search does not violate the Fourth Amendment in the absence of coercive or otherwise unusual circumstances." Id.

Riley argues that Trooper Rutledge's method of questioning amounted to an unreasonable search. Riley points to our decision in United States v. Peralez, 526 F.3d at 1120-21, where we found a Fourth Amendment violation because a trooper's "blended process" of conducting a drug interdiction investigation unreasonably prolonged a run-of-the-mill traffic stop. In Peralez, the trooper asked "off-topic" drug

interdiction questions that "more than doubled" the time a driver and his passenger were detained. Id. at 1121. Specifically, the trooper asked whether there were drugs or large amounts of cash in the van they were traveling in, if anyone had used drugs in the van recently, and if there was any reason why the trooper's drug dog might alert to the odor of drugs when the dog walked around the van. Our court found that the "extent and duration of the trooper's focus on non-routine questions prolonged the stop 'beyond the time reasonably required' to complete its purpose," thereby resulting in an unreasonable seizure. Id. (citation omitted).

After Trooper Rutledge escorted Riley back to the police vehicle, Rutledge asked Riley where he was going, why he was acting nervous, and if he had previously been in trouble. Riley claims that this was the sort of "blended process" questioning that unreasonably prolonged the stop in Peralez. Riley also claims that Rutledge's question to Riley if he had ever been "in trouble" was vague and shows that "Rutledge was simply trying to manufacture his own probable cause."

We are not convinced by Riley's argument. First, Peralez does not control in this case. See Suitt, 569 F.3d at 871 (noting the contraband evidence in Peralez was still not suppressed so that "the court's statements concerning the unlawfully extended stop are non-binding dicta"). Second, Trooper Rutledge's questioning did not rise to the level of the questioning used by the officer in Peralez. Unlike in Peralez, where the questions were drug interdiction questions that doubled the amount of waiting time, the questions posed by Trooper Rutledge were largely destination and purpose questions. The questions did not extend the traffic stop because Rutledge only asked them during the time he waited for a report on Riley's criminal history, a permissible task to be completed during the course of a traffic stop. See Bracamontes, 614 F.3d at 816. Accordingly, the questions did not constitute a Fourth Amendment violation.

D.    The time spent waiting for a drug detection dog was not unreasonable.

"A constitutionally permissible traffic stop can become unlawful . . . 'if it is prolonged beyond the time reasonably required to complete' its purpose." Peralez, 526 F.3d at 1119 (citation omitted). "Whether a traffic stop 'is reasonable in length is a fact intensive question, and there is no *per se* time limit on all traffic stops.'" Id. (citation omitted). "[U]nder the proper circumstances, we have considered delays for dog-sniffs far in excess of 90 minutes reasonable." United States v. Donnelly, 475 F.3d 946, 953-54 (8th Cir. 2007) (citing United States v. Maltais, 403 F.3d 550, 557-58 (8th Cir. 2005) (finding three-hour delay to allow drug dog to reach remote location was reasonable because officers "acted with diligence and pursued the quickest and least intrusive means of investigation reasonably available")).

Riley challenges the length of time that it took for the drug dog to arrive on the scene by relying on United States v. Place, 462 U.S. 696, 699 (1983), in which an airplane passenger's luggage was seized for approximately 90 minutes so that the luggage could be taken to another airport for a dog-sniff. However, in United States v. Donnelly, our court distinguished Place as "turn[ing] more on the unnecessary nature of the delay than on its duration." Donnelly, 475 F.3d at 953. Indeed, in Place the airport police knew when the defendant would arrive and that they would want to investigate his bag; "therefore, they could have arranged for a drug dog's presence well in advance." Donnelly, 475 F.3d at 953.

In the instant case, Trooper Rutledge called for a drug dog within eleven minutes of his initial stop and immediately after he formed his reasonable suspicion that criminal activity was afoot in Riley's vehicle. No drug dogs were on duty in the area so Rutledge had to call an off-duty drug dog to come to the scene. Therefore, we find the wait was unavoidable and not undue given the diligence shown by Rutledge. See, e.g., United States v. White, 42 F.3d 457, 460 (8th Cir. 1994) (eighty minute

detention was not unreasonable while awaiting the arrival of a drug dog where the officer "acted diligently to obtain the dog, and the delay was caused only by the remote location of the closest available dog").

  E.  The search of Riley's vehicle after he was placed in a "custodial arrest" did not exceed the proper scope of investigation.

  Finally, Riley contends the search performed by Trooper Rutledge and Corporal Hall after Riley was detained exceeded the permissible scope of the investigation. According to Riley, the search of his car exceeded the scope of the "search-incident-to-arrest exception" because he was essentially put into a custodial arrest in the squad car and thus the officers' search of his car was not one aimed at the space within his immediate control. See Arizona v. Gant, 556 U.S. 332, 351 (2009). Riley's argument is misplaced. "[T]he dog's identification of drugs in [Riley's] car provided probable cause that drugs were present, which entitled the officers to search the vehicle forthwith pursuant to the automobile exception to the warrant requirement." See United States v. Alexander, 448 F.3d 1014, 1017 (8th Cir. 2006). The district court did not err in finding no constitutional violation from the search of the trunk.

## III. Conclusion

  Riley's motion to suppress was appropriately denied. We affirm his conviction.

_____