# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1392
_____

United States of America

*Plaintiff - Appellee*

v.

Reymundo Yanez Pacheco

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: January 15, 2021
Filed: April 30, 2021
_____

Before GRUENDER, BENTON, and STRAS, Circuit Judges.
_____

GRUENDER, Circuit Judge.

After pulling over Reymundo Yanez Pacheco ("Yanez") for traffic violations, Cass County Deputy Sheriff Tyler Shiels extended the traffic stop to perform a canine drug sniff. He then conducted a warrantless search of Yanez's trunk, finding roughly forty pounds of methamphetamine. Yanez moved to suppress evidence from that search, arguing that the decisions to extend the traffic stop and to search

the trunk were unreasonable under the Fourth Amendment. The district court[1] denied Yanez's motion. We affirm.

## I.

On April 9, 2019, after seeing Yanez exceed the speed limit and drift across lanes, Deputy Shiels pulled Yanez over. As Deputy Shiels approached Yanez's vehicle, he noticed that it contained food as well as a case of soda and "looked extremely lived in," which indicated to Deputy Shiels that Yanez was traveling without taking many breaks. Deputy Shiels briefly spoke with Yanez, learning that Yanez was driving a rental vehicle from California. Deputy Shiels also viewed the rental agreement. Deputy Shiels then told Yanez that he was only going to issue a warning and asked Yanez to follow him to his patrol vehicle.

Yanez complied and the two sat in the front of Deputy Shiels's patrol vehicle as Deputy Shiels prepared the warning. While inside, Deputy Shiels saw that Yanez "appeared very nervous" and "uneasy," that he was avoiding eye contact, and that his stomach was visibly "fluttering." As they talked, it seemed to Deputy Shiels that Yanez was trying to control the conversation and asking him "very unusual questions," which, in his experience, was common of people engaged in criminal activity. When Deputy Shiels asked Yanez where he was traveling, Yanez responded "Iowa" even though they were already in Iowa. And when Deputy Shiels asked for a more specific location, Yanez struggled to remember the name of the town. Yanez also indicated that he would be visiting friends in Iowa for four or five days. But Deputy Shiels believed that the rental agreement's term was too short to account for the duration of Yanez's described trip. This struck Deputy Shiels as odd because it suggested that Yanez would drive the rental vehicle from California to Iowa and then fly back to California, which, in his experience, was "very expensive and . . . just not oftentimes reasonable for people to do."

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

-2-

Deputy Shiels issued a warning to Yanez but then asked Yanez to wait in the patrol vehicle so that Deputy Shiels could have his canine conduct a drug sniff of Yanez's vehicle. After walking his canine around Yanez's vehicle, Deputy Shiels returned to the patrol vehicle and asked for Yanez's consent to search the back seat of Yanez's vehicle, which Yanez provided.[2] While searching the back seat, Deputy Shiels noticed a spare tire sitting on the floor. When asked why the spare tire was there, Yanez indicated that the rental company had changed the spare tire but then put it in the back seat. Deputy Shiels found this "very bizarre" because rental vehicles are typically "in very good condition" with spare tires in the correct locations. Further, from his experience, Deputy Shiels knew that drug traffickers often transported narcotics in the spare-tire compartment. Deputy Shiels also asked Yanez where his luggage was, and Yanez indicated it was in a backpack in the back seat. In searching the backpack, Deputy Shiels saw "a very minimal amount of clothing," which he considered "not consistent with long travel." When asked why he had not packed more clothes, Yanez said he was planning on purchasing clothes in Iowa.

Deputy Shiels then decided to search the spare-tire compartment in the trunk. Inside that compartment, he found two large plastic bags containing around forty pounds of methamphetamine.

A federal grand jury subsequently indicted Yanez on one count of conspiracy to distribute methamphetamine and one count of possession with intent to distribute methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), 846. Yanez moved to suppress the methamphetamine seized from his vehicle, arguing that both the extended traffic stop and the warrantless search violated the Fourth Amendment. The district court denied the motion, concluding that Deputy Shiels had reasonable suspicion to extend the traffic stop and probable cause to search the trunk.

---

[2]The parties dispute whether Deputy Shiels's canine alerted to Yanez's vehicle during the drug sniff. The district court did not decide this issue, nor do we.

Yanez conditionally pleaded guilty to conspiring to distribute methamphetamine, preserving his right to appeal the suppression denial. *See* Fed. R. Crim. P. 11(a)(2). The district court sentenced Yanez to 96 months' imprisonment and 3 years' supervised release. Yanez appeals the suppression order.

## II.

"In reviewing a denial of a motion to suppress, we review the district court's findings of fact for clear error, giving due weight to the inferences police drew from those facts. We review de novo the district court's legal conclusion that reasonable suspicion or probable cause existed." *United States v. Smith*, 648 F.3d 654, 658 (8th Cir. 2011) (brackets, internal quotation marks, and citations omitted).

Yanez challenges the district court's suppression denial on two grounds. First, Yanez argues that Deputy Shiels lacked reasonable suspicion to extend the traffic stop. Second, Yanez argues that Deputy Shiels lacked probable cause to search the spare-tire compartment in the trunk. Yanez does not contest that Deputy Shiels was permitted to pull him over in the first place or that he consented to Deputy Shiels's search of the back seat.

## A.

We first consider Deputy Shiels's decision to extend the traffic stop so his canine could conduct a drug sniff. Under the Fourth Amendment, an officer may not extend a traffic stop longer than "the time needed to handle the matter for which the stop was made" unless he has reasonable suspicion of criminal activity. *Rodriguez v. United States*, 575 U.S. 348, 350, 358 (2015). Reasonable suspicion requires an officer to have "a particularized and objective basis for suspecting legal wrongdoing based upon his own experience and specialized training." *United States v. Jones*, 606 F.3d 964, 956-66 (8th Cir. 2010) (brackets omitted). Although a mere hunch is insufficient to establish reasonable suspicion, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls

-4-

considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002). In determining whether an officer had reasonable suspicion, we consider the totality of the circumstances. *Id.* at 273.

Considering the totality of the circumstances, Deputy Shiels had reasonable suspicion of criminal activity to extend the traffic stop. First, the incongruity between Yanez's short rental period and his described travel plans to drive from California to Iowa and stay with friends for four to five days suggested that either Yanez was lying about his trip or that he would be flying back, which in Deputy Shiels's experience was unusually expensive. We have previously found reasonable suspicion to extend a traffic stop in part because of the "outwardly puzzling decision to rent a car for a one-way trip at substantial expense." *United States v. McCarty*, 612 F.3d 1020, 1025 (8th Cir. 2010).

Second, Yanez gave odd answers about his travel plans. For example, when Deputy Shiels asked Yanez where he was traveling, Yanez responded "Iowa" even though he was already in Iowa. Further, Yanez had trouble remembering the name of the town to which he was travelling. We have previously found reasonable suspicion to detain a vehicle's occupants in part because of their vague and confusing answers to routine questions about travel plans. *United States v. Lebrun*, 261 F.3d 731, 733-34 (8th Cir. 2001); *see also United States v. Murillo-Salgado*, 854 F.3d 407, 416 (8th Cir. 2017) (finding reasonable suspicion to extend traffic stop based on odd responses to routine questions).

Third, Yanez "appeared very nervous," even though Deputy Shiels had informed him he would only be receiving a warning. Indeed, Yanez was so nervous that Deputy Shiels could see his stomach visibly "fluttering." *See United States v. Riley*, 684 F.3d 758, 763-64 (8th Cir. 2012) (finding reasonable suspicion to extend a traffic stop in part because the defendant had a "visibly elevated heart rate" indicative of unusual nervousness). We have previously found reasonable suspicion to extend a traffic stop where a person exhibited "unusual nervousness even after

[the officer] advised [him] that he was issuing only a warning citation." *United States v. Fuse*, 391 F.3d 924, 929 (8th Cir. 2004).

Finally, Deputy Shiels testified that the rental vehicle had a lived-in look, suggesting that Yanez was attempting to travel without making many stops. We have previously found reasonable suspicion to extend a traffic stop in part because of a vehicle's lived-in look. *United States v. Bowman*, 660 F.3d 338, 345 (8th Cir. 2011); *United States v. Mayo*, 627 F.3d 709, 714 (8th Cir. 2010); *see Lebrun*, 261 F.3d at 733 (finding reasonable suspicion to extend a traffic stop in part because it seemed the vehicle's occupants were trying to travel without stopping).

Although neither party cited *United States v. Beck*, 140 F.3d 1129 (8th Cir. 1998), in their briefs, it was raised at oral argument as possibly supporting Yanez's claim that Deputy Shiels lacked reasonable suspicion to extend the traffic stop. In *Beck*, we held that the following factors failed to establish reasonable suspicion: (i) the defendant was driving a rental vehicle that had been rented by someone else, (ii) the rental vehicle was licensed in California, (iii) there was fast-food trash on the vehicle's floor, (iv) there was no visible luggage in the passenger compartment, (v) the defendant appeared nervous, (vi) the defendant was traveling from a drug-source state to a drug-demand state, and (vii) the officer did not believe the defendant's explanation for why he was taking the trip. *Id.* at 1137.

But *Beck* is distinguishable.[3] First, this case presents factors absent in *Beck*. "Unlike the suspect[] in . . . *Beck*, who stated [his] purpose and destination without difficulty, [Yanez] was hesitant" and had difficulty answering even "basic questions about his itinerary." *See Riley*, 684 F.3d at 764. Further, here, the duration of Yanez's rental agreement suggested that Yanez either was lying about his travel

---

[3]Indeed, in the years following *Beck*, we have repeatedly distinguished it, so much so that *Beck* may be essentially limited to its facts at this point. *See, e.g.*, *Lebrun*, 261 F.3d at 734; *United States v. Linkous*, 285 F.3d 716, 720-21 (8th Cir. 2002); *Fuse*, 391 F.3d at 929-30; *United States v. Maltais*, 403 F.3d 550, 555 (8th Cir. 2005); *Riley*, 684 F.3d at 764.

plans or had made the "outwardly puzzling decision to rent a car for a one-way trip at substantial expense." *See McCarty*, 612 F.3d at 1025. This factor too was absent in *Beck*. *See Linkous*, 285 F.3d at 720-21 (distinguishing *Beck* and finding reasonable suspicion in part because of the apparent implausibility of the defendant's stated travel plans). Indeed, *Beck* itself acknowledged that reasonable suspicion could arise from "unusual or suspicious travel plans." 140 F.3d at 1139.

Second, although *Beck*'s analysis of nervousness as a factor appears facially relevant to this case, a closer examination reveals material distinctions. In *Beck*, we found that an officer's "subjective assessment that [the defendant] was nervous during the traffic stop" because "his hands were shaking and he was looking around" was, "at best, minimal[ly]" suspicious. 140 F.3d at 1132, 1139. But in later cases we explained that *Beck*'s holding does not foreclose relying on a defendant's unusual or extreme nervousness to find reasonable suspicion. Here, "[u]nlike the defendant in *Beck*," Yanez "exhibited extreme or unusual nervousness . . . even after [Deputy Shiels] stated he would be issuing only a warning." *See Fuse*, 391 F.3d at 930. Also, that Yanez was avoiding eye contact and that his stomach was visibly fluttering demonstrated objectively unusual nervousness beyond the officer's "subjective assessment" in *Beck*, 140 F.3d at 1139. *See Linkous*, 285 F.3d at 720-21 (acknowledging *Beck* but still finding reasonable suspicion to extend a traffic stop in part because the defendant "was palpably nervous, made no eye contact, and kept his arms crossed"); *Riley*, 684 F.3d at 761, 764 (distinguishing *Beck* and finding reasonable suspicion in part because the defendant's "heart rate appeared to be elevated, as [the officer] could see [the defendant's] pulse in [his] neck and stomach"). In sum, this case differs from *Beck* in several material ways.

Considering the totality of the circumstances, we conclude that Deputy Shiels had a reasonable suspicion of criminal activity that justified extending the traffic stop to conduct a canine drug sniff.

B.

We next consider Deputy Shiels's search of Yanez's vehicle's trunk. Under the automobile exception to the Fourth Amendment, an officer may search a vehicle without a warrant if he has probable cause. *United States v. Rodriguez*, 414 F.3d 837, 843 (8th Cir. 2005). An officer has probable cause if, "given the totality of the circumstances, a reasonable person could believe that there is a fair probability that contraband or evidence of a crime would be found in a particular place." *Id.*

Having already concluded that a number of suspicious factors gave Deputy Shiels reasonable suspicion of ongoing criminal activity, the question here is whether additional events after the decision to extend the traffic stop elevated that reasonable suspicion to probable cause. We conclude that they did.

First, while searching Yanez's backpack in the back seat (with Yanez's consent), Deputy Shiels learned that Yanez had an insufficient amount of clothing considering the described length of Yanez's trip. And, in response to Deputy Shiels's follow-up question, Yanez offered an implausible explanation—that he was going to buy clothes upon reaching his destination in Iowa. *See District of Columbia v. Wesby*, 583 U.S. ---, 138 S. Ct. 577, 587-88 (2018) (finding probable cause in part because of vague and implausible responses).

Second, the spare tire in the back seat was very suspicious. This was an extremely unusual placement for a spare tire, especially considering that it was in a rental vehicle and that rental vehicles are ordinarily kept in good condition. Indeed, other circuits have indicated that spare tires in a back seat can support probable cause. *United States v. Espinoza-Seanez*, 862 F.2d 526, 533 (5th Cir. 1988); *United States v. Bentley*, 795 F.3d 630, 635-36 (7th Cir. 2015); *cf. United States v. Corral*, 899 F.2d 991, 994 (10th Cir. 1990) (finding reasonable suspicion because a spare tire was out of place). And Deputy Shiels testified that, in his experience, drug traffickers often keep drugs in the spare-tire compartment. *See United States v. Ortiz-Monroy*, 332 F.3d 525, 529 (8th Cir. 2003) ("In forming a basis for suspicion,

officers may draw on their own experience and specialized training . . . ." (internal quotation marks omitted)). And, when asked about its presence, Yanez again gave an implausible explanation—that the rental company had placed it there. *See Wesby*, 138 S. Ct. at 587-88 (finding probable cause in part because of implausible responses).

Considering the totality of the circumstances, Deputy Shiels had probable cause to search the trunk of Yanez's vehicle.

## III.

For the foregoing reasons, we affirm the district court's decision denying Yanez's motion to suppress.

_____