# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-3437

_____

United States of America

*Plaintiff - Appellee*

v.

Jose Vinicio Ovando-Garzo

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: May 16, 2014
Filed: May 30, 2014

_____

Before WOLLMAN, BYE, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

Jose Vinicio Ovando-Garzo pleaded guilty to one count of reentry after removal in violation of 8 U.S.C. § 1326(a). He appeals the district court's[1] denial of

_____

[1]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

his motion to suppress evidence of his identity obtained during a traffic stop. We affirm.

I

At approximately 9:45 a.m. on April 5, 2013, Trooper Christopher Pulver of the North Dakota Highway Patrol initiated a traffic stop of a red pickup truck for speeding. The stop occurred on North Dakota Highway 23, approximately five miles east of Parshall, North Dakota. Three individuals occupied the front seat of the vehicle: Jorge Perez was driving, Daniel Hernandez Perez was in the middle, and Ovando-Garzo was in the right front passenger seat. Trooper Pulver observed that Daniel appeared nervous and would not make eye contact with Trooper Pulver when he commented that Daniel was not wearing a seatbelt.

During the stop, Jorge admitted his driver's license had been revoked. Upon receiving this information, Trooper Pulver returned to his patrol car and confirmed Jorge's Nebraska driver's license was suspended. Trooper Pulver had Jorge come to his patrol car. There, he asked Jorge whether either of the passengers had a current driver's license, and Jorge responded neither did. Trooper Pulver also asked if the passengers spoke English, and Jorge responded they did. Jorge then stated he could call someone to pick up the truck and its passengers. After running additional records checks, Trooper Pulver placed Jorge under arrest for driving with a suspended license. He handcuffed Jorge and placed him in his patrol car. The arrest was completed by 10:12 a.m.

Trooper Pulver then returned to the pickup truck to speak with the two passengers. Trooper Pulver testified he did not want to leave the passengers stranded on the side of the road five miles from the nearest town in freezing weather. He asked the passengers to identify themselves, which they both did, although both stated they had no identification documents. Both passengers had difficulty communicating in

English.  Trooper Pulver suspected they may be concealing criminal activity due to their lack of identification and Daniel's nervous behavior.  Trooper Pulver ran the passengers' names through the National Crime Information Center database and found no outstanding wants or warrants based on the names which had been provided.

Trooper Pulver began to suspect the passengers were unlawfully present in the United States.  His affidavit stated this belief was based on multiple factors, including the recent rise of undocumented aliens in the area due to the rise in oil field production, their lack of identification, their ineffective ability to communicate in English, and Daniel's nervous behavior.

Trooper Pulver asked the passengers where they were living, and both responded they lived in Plaza, North Dakota.  Trooper Pulver next asked where they lived before coming to North Dakota, and both stated they had traveled from Nebraska and California.  Trooper Pulver then asked where they were born.  Daniel stated he was born in Mexico, and Ovando-Garzo admitted he was born in Guatemala.  Both passengers appeared very nervous when responding to this question.  Finally, Trooper Pulver asked if both were unlawfully present in the United States, and both admitted they were.  These admissions occurred at approximately 10:21 a.m., nine minutes after Trooper Pulver arrested Jorge.

Upon hearing the admissions, Trooper Pulver contacted Border Patrol for assistance.  Border Patrol confirmed the passengers were in the country illegally and informed Trooper Pulver they would send an agent to take custody of the individuals.  Because he intended to transport Jorge to the Mountrail County Sheriff's Office, Trooper Pulver offered to transport both Ovando-Garzo and Daniel as well and meet the agent there, which he did.

On April 8, 2013, Ovando-Garzo was charged with one count of reentry after removal in violation of 8 U.S.C. § 1326(a).  He filed a motion to suppress the

evidence of his immigration status obtained by Trooper Pulver during the traffic stop. On August 29, 2013, the district court denied the motion. On October 31, 2013, Ovando-Garzo pleaded guilty and was sentenced to time served. He was then removed from the United States on November 14, 2013.

II

In reviewing the denial of a motion to suppress, we review a district court's factual determinations for clear error and its legal conclusions de novo. United States v. Douglas, 744 F.3d 1065, 1068 (8th Cir. 2014).

"[I]f a defendant is detained incident to a traffic stop, the officer does not need reasonable suspicion to continue the detention until the purpose of the traffic stop has been completed." United States v. Bueno, 443 F.3d 1017, 1025 (8th Cir. 2006). Occupants, including passengers, may be detained "while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation." United States v. Riley, 684 F.3d 758, 764 (8th Cir. 2012). These tasks can include "a computerized check of the vehicle's registration and the driver's license and criminal history, as well as the preparation of a citation or warning." United States v. Quintero-Felix, 714 F.3d 563, 567 (8th Cir. 2013). The officer may also ask questions about the occupant's travel itinerary. United States v. McCarty, 612 F.3d 1020, 1024-25 (8th Cir. 2010).

However, once an officer finishes the tasks associated with a traffic stop, "the purpose of the traffic stop is complete and further detention . . . would be unreasonable unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify further detention[.]" United States v. Flores, 474 F.3d 1100, 1103 (8th Cir. 2007) (internal quotation marks and citations omitted). Whether a detention is reasonable "is a fact-intensive question" which is "measured

in objective terms by examining the totality of the circumstances." United States v. Suitt, 569 F.3d 867, 871 (8th Cir. 2009).

Ovando-Garzo argues the arrest of the driver terminated the traffic stop and, thus, the questioning which occurred afterwards was an unlawful expansion of the traffic stop's scope. He also argues the questioning about his immigration status was not reasonably related in scope to the circumstances justifying the traffic stop.

Trooper Pulver's questioning was properly within the lawful scope of the traffic stop as a logical extension necessary to determine what to do with the truck and its passengers following the arrest of the driver. The traffic stop occurred five miles from the nearest town in freezing temperatures and neither passenger had a valid driver's license. The circumstances of the arrested required Trooper Pulver to engage in a community caretaking function of safely moving the vehicle and its occupants from the side of the road and certain questioning was necessary to accomplish such a task. Trooper Pulver's questioning was reasonably related to the purpose of terminating the traffic stop and did not unreasonably prolong the stop's duration. See Muehler v. Mena, 544 U.S. 93, 101 (2005) (holding that questioning an individual about her identity and immigration status during the execution of a search warrant did not require independent reasonable suspicion); United States v. Slater, 411 F.3d 1003, 1005-06 (8th Cir. 2005) (holding an officer's request for a passenger's identification following a vehicle stop at a sobriety checkpoint was constitutional because it did not unreasonably extend the length of the stop and the questioning was reasonably related to the purpose of the stop).

Because we conclude Trooper Pulver did not unreasonably prolong the traffic stop, it is unnecessary to consider whether he had reasonable suspicion to continue the investigation or whether suppression of the identity evidence obtained is an appropriate remedy under these circumstances.

Ovando-Garzo also argues state and local officials "generally have no authority to arrest aliens on the basis of possible removability which Congress has given to trained federal immigration officers." This argument is meritless. Although a formal, written agreement is sometimes required for a state official to perform certain functions of a federal immigration officer, no written agreement is required for a state official to cooperate with the Attorney General in identifying, apprehending, and detaining any individual unlawfully present in the United States. See 8 U.S.C. § 1357(g)(10). Here, Trooper Pulver's acts—identifying Ovando-Garzo, communicating with the Border Patrol, and detaining Ovando-Garzo until the Border Patrol agent could take custody—were not unilateral and, thus, did not exceed the scope of his authority. See United States v. Arizona, 132 S.Ct. 2492, 2507 (2012) (discussing 8 U.S.C. § 1357(g)(10)); United States v. Quintana, 623 F.3d 1237, 1242 (8th Cir. 2010) (holding state trooper was authorized to assist federal agent in detaining individual suspected of being unlawfully present in the United States); cf. Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 466-67 (4th Cir. 2013) (recognizing local police may detain and transport an alien after express direction of federal officials) (citing United States v. Guigon-Ortiz, 660 F.3d 757, 765 (4th Cir. 2011) and United States v. Soriano-Jarquin, 492 F.3d 495, 496-97 (4th Cir. 2007)).

III

For the foregoing reasons, we affirm the district court's denial of Ovando-Garzo's motion to suppress.

_____