# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2879
_____

United States of America

*Plaintiff - Appellee*

v.

Chad Alan Soderman

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Council Bluffs
_____

Submitted: September 25, 2020
Filed: December 21, 2020
_____

Before KELLY, WOLLMAN, and STRAS, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Chad Alan Soderman entered conditional pleas of guilty to possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and possession of a firearm in furtherance of drug trafficking in violation

of 18 U.S.C. § 924(c)(1)(A)(I). On appeal, Soderman contends that the district court[1] erred in denying his motion to suppress evidence obtained from his seized vehicle and his statements made during the traffic stop. We affirm.

## I. Background

At approximately 7:30 a.m., July 7, 2018, Iowa State Trooper Matthew Raes pulled Soderman over for driving seventeen miles per hour above the speed limit on Interstate 80 near Council Bluffs, Iowa. Soderman appeared unkempt, had an unpleasant body odor, and was nervously tapping his steering wheel. Raes observed two large duffel bags, aftermarket wires, snacks, and energy drinks within the vehicle's passenger compartment. Raes asked Soderman to exit his vehicle and sit in the front seat of the patrol car, which Soderman did after demonstrating some initial reluctance to doing so. Soderman told Raes that he was traveling from Colorado to Minnesota to visit his father and dying stepmother.

While completing a records check, Raes discovered that Soderman's Colorado driver's license had been suspended for unpaid child support. Soderman disputed the suspension and became more agitated, repeatedly stating that he had made the required support payments. Believing that he had observed indicia of drug trafficking, Raes called Council Bluffs Police Officer Kaila Merchant, who was trained in drug interdiction and had worked as a law enforcement officer for approximately eight years, to obtain a more experienced assessment. Because he could not lawfully continue to drive with a suspended license, Soderman called a tow truck company and his stepmother, demanding that she immediately drive to Iowa to meet him.

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

Officer Merchant arrived before the arrival of the Soderman-summoned tow truck. Like Raes, Merchant also observed Soderman's behavior and appearance and viewed the contents of his vehicle's passenger compartment. Because Soderman was confused about his exact location, he handed his phone to Merchant so that she could provide his father with directions. During her conversation with him, Merchant asked Soderman's father if Soderman had been involved in drug trafficking, to which Soderman's father responded either, "not for a long time," or, "well not recently." Although Soderman's father stated that they had previously discussed an unspecified-date visit, he said that he did not know that Soderman was on his way to Minnesota at the moment. In response to Merchant's query, Soderman told her he had had a problem with drugs in the past but had been clean for years. He admitted to having smoked marijuana in the car while in Colorado.

Based on her observations and law enforcement experience, Merchant concluded that she had probable cause to believe that there would be evidence of drug paraphernalia within the car. She decided to seize the vehicle and requested a second tow truck. Raes issued Soderman tickets for speeding and for driving with a suspended license. Upon the arrival of the Soderman-requested tow truck, Merchant informed the driver that she intended to use a different towing company, whereupon the tow truck departed. Shortly thereafter—and seventy-five minutes after the traffic stop began—Soderman walked away from the scene before the second tow truck arrived, leaving his vehicle with Raes and Merchant. The Merchant-summoned tow truck arrived and towed Soderman's car to the impound lot. Merchant submitted to a state judge the application and the affidavit needed to obtain a search warrant, but mistakenly failed to submit the required warrant itself. Believing that she had obtained a valid warrant, Merchant searched Soderman's vehicle, discovering methamphetamine, marijuana, a loaded firearm, magazines and ammunition, and a digital scale in the trunk.

Arguing that the warrant was invalid, Soderman moved to suppress the evidence obtained from his vehicle, as well as the statements that he made during the traffic stop.  Following the district court's denial of the motion, Soderman entered conditional guilty pleas and was sentenced to 180 months' imprisonment.

## II.  Discussion

"We review the denial of a motion to suppress de novo but review underlying factual determinations for clear error, giving 'due weight' to the inferences of the district court and law enforcement officials."  United States v. Robbins, 682 F.3d 1111, 1115 (8th Cir. 2012) (quoting United States v. Replogle, 301 F.3d 937, 938 (8th Cir. 2002)).  "We will affirm the denial of a motion to suppress unless the district court's decision was unsupported by substantial evidence, was based on an erroneous interpretation of applicable law, or was clearly mistaken in light of the entire record."  United States v. Murillo-Salgado, 854 F.3d 407, 414 (8th Cir. 2017) (citing United States v. Woods, 829 F.3d 675, 679 (8th Cir. 2016)).  We may affirm the denial of a motion to suppress on any ground that the record supports.  Id.

### A.  Traffic Stop

Soderman first argues that Raes unlawfully extended the initially valid traffic stop in violation of Rodriguez v. United States, 575 U.S. 348 (2015), thereby giving Merchant time to arrive on the scene, develop probable cause, and seize the vehicle.

Because it is subject to Fourth Amendment protections against unreasonable searches and seizures, a traffic stop must be supported by either reasonable suspicion or probable cause.  United States v. Chartier, 772 F.3d 539, 543 (8th Cir. 2014).  A constitutionally permissible traffic stop becomes unlawful when its length exceeds the time needed to attend to the stop's "mission" and "related safety concerns."  Rodriguez, 575 U.S. at 354 (internal citations omitted).  An officer may lawfully

continue a traffic stop until "tasks tied to the traffic infraction are—or reasonably should have been—completed." Id. When complications arise "in carrying out the traffic-related purposes of the stop, . . . police may reasonably detain a driver for a longer duration than when a stop is strictly routine." United States v. Olivera-Mendez, 484 F.3d 505, 510 (8th Cir. 2007). To address related safety concerns, an officer may take actions to "ensur[e] that vehicles on the road are operated safely and responsibly," including checking the driver's license. Rodriguez, 575 U.S. at 355. But without reasonable suspicion, an officer may not conduct unrelated checks that extend the stop beyond the time reasonably required to complete its original mission. Id.

Raes's discovery that Soderman's driver's license had been suspended justifiably extended the lawful scope of the traffic stop because of Soderman's legal inability to remove the vehicle from the scene and the consequential need for a licensed driver or a tow truck to do so. See United States v. Ovando-Garzo, 752 F.3d 1161, 1164 (8th Cir. 2014) (concluding that when none of the occupants of a vehicle were licensed to drive, the officer was permitted "to engage in a community caretaking function of safely moving the vehicle and its occupants from the side of the road"). Raes expressed to Soderman his concern about the dangerousness of the vehicle's road-shoulder placement in light of the interstate's curvature at that point. The confluence of Soderman's decision to call a tow truck, Merchant's arrival, and, as discussed below, her development of probable cause to seize the vehicle vitiates any claim that the stop was unlawfully prolonged.

Contrary to Soderman's arguments, United States v. Peralez, 526 F.3d 1115 (8th Cir. 2008), is inapposite. In Peralez, an officer found nothing "unusual or out of place" with the driver's license or vehicle registration; the stop was delayed entirely because of the officer's drug-interdiction questioning. Id. at 1120. Here, unlike in Peralez, the length of the stop was directly related to the community caretaking function of ensuring the safe removal of the vehicle and not to unrelated questioning

-5-

or to the awaiting of another officer's arrival. Cf. United States v. Davis, 943 F.3d 1129, 1133 (8th Cir. 2019) ("This stop is easily distinguishable [from Peralez] and involves traditional bases of reasonable suspicion justifying an extension.").

## B. Vehicle Seizure & Search

Soderman next argues that Merchant lacked probable cause to search and seize the vehicle and that the evidence obtained from within the vehicle should therefore have been suppressed. In the absence of a judicially authorized warrant, we address whether Merchant had independent probable cause to conduct a warrantless search of Soderman's vehicle under the automobile exception.

Although a warrantless search usually constitutes a *per se* Fourth Amendment violation, the automobile exception to the Fourth Amendment's warrant requirement permits the warrantless search or seizure of a vehicle by officers possessing probable cause to do so. Chambers v. Maroney, 399 U.S. 42, 51–52 (1970). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." Murillo-Salgado, 854 F.3d at 418 (quoting United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003)). A combination of otherwise innocent factors may create probable cause. Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983). Because "[p]robable cause is a practical and common-sensical standard," "an officer may draw inferences based on his own experience" to determine whether probable cause exists. Murillo-Salgado, 854 F.3d at 418 (internal quotation marks and citations omitted).

Merchant developed probable cause to believe Soderman's car contained evidence of drug trafficking while Raes was addressing the issue of Soderman's suspended license and related vehicle removal. As set forth in her police report, Merchant saw the aftermarket wires in Soderman's vehicle, from which she inferred

that the vehicle might have been manipulated to conceal drugs. Merchant also saw Soderman's snacks and energy drinks, which, in combination with his disheveled appearance and malodorous state, indicated that he might have been driving for a long period of time without stopping for food or a shower. See United States v. Mayo, 627 F.3d 709, 711, 714 (8th Cir. 2010) (police had probable cause to search vehicle in part because its "lived-in" look could indicate the "'hard travel' common to drug couriers who drive for long periods without stopping").

Soderman's conduct during the stop also contributed to Merchant's belief that there was probable cause to search the vehicle. The dashcam recording from Raes's patrol car indicates that throughout the stop Soderman was agitated, nervous, breathing heavily, and confused about his location. See id. at 714 (police had probable cause to search vehicle in part because of defendants' nervousness). Lacking a valid license, Soderman stated that he intended to tow his vehicle from Council Bluffs to an unspecified location near the Minnesota-Iowa border, where he anticipated being picked up by his father and his accompanying stepmother, who Soderman said was dying and who had been released from the hospital three days prior. Soderman also insisted on not being separated from his vehicle. Moreover, Soderman's father expressed surprise that Soderman was en route and acknowledged that Soderman had a history of drug trafficking. See United States v. Hill, 386 F.3d 855, 858 (8th Cir. 2004) (police had probable cause to search vehicle in part because of defendant's "reputation for engaging in drug activity"); cf. Mayo, 627 F.3d at 714 (police had probable cause to search vehicle in part because of defendants' inconsistent travel stories). The cash that Soderman carried was less than the amount we have found sufficient to establish probable cause, but when considered with the factors noted above, his bulging wallet contributed to the circumstances giving rise to probable cause.

The automobile exception may apply even when there is little to no chance that the vehicle will be moved or its contents destroyed. Cady v. Dombrowski, 413 U.S. 433, 441–42 (1973). Officers armed with probable cause "may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." United States v. Bettis, 946 F.3d 1024, 1030 (8th Cir. 2020) (quoting Michigan v. Thomas, 458 U.S. 259, 261 (1982) (per curiam)). The automobile exception continues to apply to impounded vehicles when an immediate search could have been conducted on the scene. Brewer v. Wolff, 529 F.2d 787, 792 (8th Cir. 1976) (interpreting Texas v. White, 423 U.S. 67 (1975)).

We therefore reject Soderman's argument that, even if she had probable cause to seize Soderman's car, Merchant was required to obtain a warrant prior to searching the impounded vehicle. See Bettis, 946 F.3d at 1030. Merchant intended to obtain confirmation from a magistrate that she had probable cause prior to conducting a search. The judge confirmed her probable cause determination by signing her application and affidavit, notwithstanding the absence of a warrant. Practical considerations supported Merchant's decision to move the vehicle prior to the search. Merchant's dashcam recordings show numerous semi-trucks and passenger vehicles passing by the three shoulder-parked vehicles during the stop. See id. (noting that the officers were not required to obtain a warrant before properly "conduct[ing] a more thorough search than flashlights on the shoulder of a busy highway allowed"). We therefore agree with the district court that the automobile exception to the warrant requirement permitted Merchant to conduct a warrantless search of Soderman's car following its removal from the scene.

## C. Miranda Warning

Soderman next argues that he was subjected to a custodial interrogation during the traffic stop, that he never received a Miranda warning, and that his statements made during the stop should thus be suppressed.

-8-

Miranda warnings are required only when a person is in custody, because they are intended to "protect the individual against the coercive nature of custodial interrogation." United States v. Thomas, 664 F.3d 217, 222 (8th Cir. 2011) (quoting J.D.B. v. North Carolina, 564 U.S. 261, 270 (2011)). "Whether a suspect is 'in custody' is an objective inquiry," where we assess both "the circumstances surrounding the interrogation" and "whether a reasonable person would have felt at liberty to end the interrogation and leave." Id. (citing J.D.B., 564 U.S. at 270). A stop is not custodial if it does not constrain the defendant "to the degree associated with an arrest." United States v. Pelayo-Ruelas, 345 F.3d 589, 593 (8th Cir. 2003). Although stopped drivers are detained, they are generally not in custody during the roadside questioning that is permitted during a traffic stop. Berkemer v. McCarty, 468 U.S. 420, 439–40 (1984).

We conclude that Soderman was not in custody during the traffic stop. See United States v. Holleman, 743 F.3d 1152, 1159 (8th Cir. 2014) (listing factors—like whether the suspect was free to move and to leave, whether the officers used deceptive stratagems, and whether the suspect was under arrest—to consider when determining whether a person is in custody (quoting United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990)). Although Soderman was temporarily detained, only two officers were present during the stop. See Berkemer, 468 U.S. at 438–39 ("The fact that the detained motorist typically is confronted by only one or at most two policemen further mutes his sense of vulnerability."). And although Raes asked Soderman to sit in the patrol car during the stop, Soderman was neither handcuffed nor forced to sit in the back seat. He thus retained a degree of free movement, as reflected by his frequent gestures, body movement, and statements, and was not constrained to the degree associated with a formal arrest. See United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001) ("[A] police officer, incident to investigating a lawful traffic stop, may . . . request that the driver wait in the patrol car . . . ."). Throughout the stop, Raes offered to take Soderman to a gas station and at no time

said that Soderman would continue to be detained after the stop concluded. Although Merchant suggested that she would call a drug dog, Soderman was free to leave once the traffic tickets were issued. The district court thus properly denied the motion to suppress his statements.

The judgment is affirmed.

_____