# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-1241
_____

United States of America

*Plaintiff - Appellee*

v.

Veronica Gonzalez-Carmona, also known as Cinthia Selene Ramirez Barba, also known as Carolina Ponce Macias

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Western

_____

Submitted: November 16, 2021
Filed: May 24, 2022

_____

Before COLLOTON, GRASZ, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Veronica Gonzalez-Carmona pleaded guilty to possessing heroin with intent to distribute. The district court[1] sentenced her to 120 months in prison and five years of supervised release. She appeals, arguing that the district court erred by: (1)

_____

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

denying her motion to suppress; (2) denying her request for safety valve relief; and (3) miscalculating her Guidelines range. We affirm.

I.

Gonzalez-Carmona was driving a rental car on I-80 in Iowa when Deputy Brian Miller pulled her over for going 60 in a 55 mph zone. When he approached the car, Miller smelled an "overwhelming" scent of candles. He asked for identification, and Gonzalez-Carmona gave him a California license[2] and the rental car agreement. She apologized for speeding and explained that she and the passenger, Giovani Andres Jiminez, rented the car in Las Vegas a few days before. Miller, standing on the passenger side of the car, had trouble hearing Gonzalez-Carmona and asked her to get out and talk with him behind the car.

Gonzalez-Carmona told Miller that she and Jiminez, her boyfriend, were going to Iowa. When Miller told her they were already in Iowa, she said they were going to a restaurant in Iowa and then to Ohio. Miller asked her about the rental agreement, which stated the car was due back in Las Vegas the previous day. Gonzalez-Carmona explained that they got an extension. Miller then asked who rented the car. Gonzalez-Carmona did not immediately respond, but looked down at the rental agreement, appearing to search for a name before responding that Jiminez rented it.

Miller then returned to the car to speak with Jiminez, who told him that they were on their way to Des Moines to "look around" and then would return to Las Vegas. Miller asked if they planned on traveling to any other states, and Jiminez said no.

Miller went back to his patrol car to issue a warning citation. Because Gonzalez-Carmona's license would not scan, he asked her for her current address.

---

[2] The license listed her name as Cinthia Selene Ramirez Barba.

She said that she moved from California to Las Vegas two months before, but she did not know her Las Vegas address. She could only describe it as near the Tropicana hotel. Miller asked if she had any mail with her current address, and she responded that she was still getting her mail in California.

Miller finished the citation manually and asked if Gonzalez-Carmona had any questions, and if there was anything illegal in the car. Both Gonzalez-Carmona and Jiminez said that there was not. Miller asked if he could search the car. He showed them a consent-to-search form in English and Spanish and asked if they had any questions. They verbally consented to the search but did not sign the form. Miller asked them to get out of the car and walk ahead, gesturing toward the shoulder. Gonzalez-Carmona started to drive the car where he gestured. Miller placed his hand on the car and told them to get out and walk. They both got out of the car and stood on the shoulder. In the trunk, Miller found three bundles of Firestarter logs with 28.4 pounds of heroin hidden inside. He arrested Gonzalez-Carmona and Jiminez.

Gonzalez-Carmona filed a motion to suppress the drugs, which the district court denied. She then conditionally pleaded guilty to possessing heroin with intent to distribute, preserving her right to appeal the denial of her suppression motion. After her plea, Gonzalez-Carmona gave a proffer interview to law enforcement officers to qualify for safety valve relief. During the interview, she told law enforcement how she became involved in drug trafficking, including who recruited her and the methods used to transport the drugs, as well as how she paid for living expenses since coming to the United States. But at sentencing, the district court found that she was not entirely truthful, specifically about the source of funds in her bank account, and denied the requested relief. It then found that because she was the point of contact with the drug source, she was not entitled to a mitigating role reduction. The court sentenced her to 120 months in prison followed by five years of supervised release. Gonzalez-Carmona appeals.

II.

"When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo." *United States v. Simmermaker*, 998 F.3d 1008, 1009 (8th Cir. 2021) (citation omitted). Gonzalez-Carmona argues that Miller violated the Fourth Amendment by: (1) stopping her car; (2) asking her to exit; (3) extending the traffic stop; and (4) searching the car.

A.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "A traffic stop constitutes a seizure under the Fourth Amendment and must be supported by either reasonable suspicion or probable cause." *United States v. Foster*, 15 F.4th 874, 877 (8th Cir. 2021) (citation omitted). But "any traffic violation, no matter how minor, is sufficient to provide an officer with probable cause." *Id.* (citation omitted).

Miller testified that his radar showed Gonzalez-Carmona driving 60 in a 55 mph zone, and that she repeatedly apologized for speeding. Gonzalez-Carmona argues that the only evidence that she was speeding is Miller's "incredible and contradicted" testimony. But the district court found Miller's testimony credible, and that finding is "virtually unreviewable on appeal." *United States v. Holly*, 983 F.3d 361, 363 (8th Cir. 2020) (citation omitted). Crediting a witness's testimony "can almost never be a clear error unless there is extrinsic evidence that contradicts the witness's story or the story is so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it." *Id.* at 363–64 (citation omitted).

Gonzalez-Carmona points to several alleged inconsistencies in Miller's testimony. But the statements she points to are not actually inconsistent. [3] And even if they are, none rise to the level of clear error. As a whole, Miller's testimony is consistent and plausible. Because the district court's finding of credibility was not clear error, there was probable cause to stop Gonzalez-Carmona.

B.

Gonzalez-Carmona also argues that Miller lacked the authority to ask her to get out of the car. That is wrong. During a lawful traffic stop, an officer may order the occupants to leave their car as a matter of course. *Pennsylvania v. Mimms*, 434 U.S. 106, 109–11 (1977) (per curiam); *United States v. Sanders*, 510 F.3d 788, 790 (8th Cir. 2007). Gonzalez-Carmona attempts to distinguish these cases by saying that Miller was not concerned for his safety. But an individualized finding of officer safety concerns is not required. *See Mimms*, 434 U.S. at 110–11 (holding that officer's practice of ordering occupants out of the car during all traffic stops was not a constitutional violation).

---

[3]The alleged inconsistencies include: the traffic on the highway, whether there were guardrails near the stop, whether Gonzalez-Carmona knew why she was pulled over, and whether Miller acted in bad faith by not turning on his body camera. The district court specifically credited Miller's testimony about the presence of guardrails and found that Miller did not act in bad faith by not activating his body camera.

Miller did say that traffic was light when he first saw Gonzalez-Carmona's car, but later said that he could not hear her over traffic noises during the stop. These statements are not inconsistent, given that he followed her for two miles before pulling her over. And the fact that Gonzalez-Carmona understood the reason for the stop does not mean that Miller could not speak to her.

C.

Gonzalez-Carmona next challenges the extension of the traffic stop. A lawful traffic stop can become unconstitutional if it is unreasonably extended. *United States v. Callison*, 2 F.4th 1128, 1131 (8th Cir. 2021). "A seizure justified only by a police-observed traffic violation, therefore, becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015) (quotation omitted) (cleaned up).

To lawfully extend a traffic stop, an officer must have reasonable suspicion of criminal activity. *Id.* at 355. Reasonable suspicion requires "specific and articulable facts which, taken together with rational inferences from those facts, amount to reasonable suspicion that further investigation is warranted." *United States v. Murillo-Salgado*, 854 F.3d 407, 415 (8th Cir. 2017) (quotation omitted). "An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered." *Id.* (citation omitted). We consider the totality of circumstances to decide whether there was reasonable suspicion. *Id.*

When Miller first approached the car, he noted an "overwhelming" smell of candles. Based on his training, he suspected the candles were a masking agent to cover the smell of drugs. When he asked Gonzalez-Carmona and Jiminez about their travel plans, they gave different answers—Gonzalez-Carmona said they were going to a restaurant in Iowa before going to Ohio, while Jiminez said they were going to Des Moines to "look around" and then heading back to Las Vegas.

Gonzalez-Carmona's statements about her address also added to Miller's suspicion. Her California driver's license would not scan, so Miller asked for a current address, which she did not know. She only knew that she lived by the Tropicana hotel in Las Vegas. When Miller asked if she had any mail with her address, she said she was still receiving her mail in California. Miller also found

Gonzalez-Carmona's answers about her relationship with Jiminez suspicious. She said Jiminez was her boyfriend, but when Miller asked who rented the car, Gonzalez-Carmona had to look at the rental agreement to come up with his full name. These facts, viewed through the lens of Miller's training and experience with detecting drug trafficking along this stretch of I-80, gave Miller reasonable suspicion to extend the stop.

D.

Finally, Gonzalez-Carmona challenges the district court's finding that she and Jiminez voluntarily consented to the search of the car. "[W]e review a district court's finding of voluntary consent under a clear error standard." *United States v. LeBeau*, 867 F.3d 960, 970 (8th Cir. 2017) (citation omitted). "[T]he analysis turns on whether it was reasonable for the officer to believe that the suspect gave him permission to search the requested item." *United States v. Magallon*, 984 F.3d 1263, 1280 (8th Cir. 2021).

Miller testified that he went over the English and Spanish consent-to-search form with both of them and asked if they had any questions. Although they did not sign the form, he said that they verbally consented. Miller also testified that he asked them to step out of the car and walk ahead toward the shoulder of the road. Gonzalez-Carmona began driving the car toward where Miller gestured, so he put his hand on the car and told them they could just get out and walk. They followed his directions and moved farther away when asked. Given the district court's finding that Miller was a credible witness, and the lack of extrinsic evidence contradicting his testimony, the district court did not err in finding that Gonzalez-Carmona and Jiminez consented to the search.

Gonzalez-Carmona argues that even if she did consent, it was not voluntary. She relies primarily on the fact that Miller placed his hand on the car when she tried to drive away. We agree with the district court that this was the result of a slight miscommunication. It happened after Miller got verbal consent, and the video shows

that Gonzalez-Carmona started driving where Miller had gestured. When Miller told her to walk rather than drive, she quickly complied. Based on the totality of circumstances, the district court did not err in finding voluntary consent.

Because the district court properly found that Miller's actions did not violate the Fourth Amendment, we affirm the denial of the motion to suppress.

III.

Gonzalez-Carmona also challenges the district court's denial of safety valve eligibility. Safety valve relief allows a judge to sentence less culpable drug offenders below the mandatory minimum term if certain conditions are met. *United States v. Hinojosa*, 728 F.3d 787, 790 (8th Cir. 2013). To qualify for safety valve relief, a defendant must prove the five requirements in 18 U.S.C. § 3553(f) by a preponderance of the evidence. *Id.* We review "a district court's findings regarding the completeness and truthfulness of information provided by a defendant and the ultimate denial of safety valve relief for clear error." *Id.* "The legal test is simply whether the record supports its safety valve findings." *United States v. Alvarado-Rivera*, 412 F.3d 942, 949 (8th Cir. 2005) (en banc).

The only requirement at issue is whether Gonzalez-Carmona "truthfully provided to the Government all information and evidence [she had] concerning the offense." 18 U.S.C. § 3553(f)(5). The district court found that there were "significant shortcomings" in the information Gonzalez-Carmona provided that could not be explained "by anything other than a lack of truthfulness and completeness." Specifically, the court discredited Gonzalez-Carmona's testimony about the source of the money in her bank account. The court found the Government's proffered testimony more credible, which suggested that the bank account activity was consistent with money laundering associated with drug trafficking.

Gonzalez-Carmona argues that the district court required her to give the Government *new* information, which goes beyond the requirement that she truthfully

-8-

provide information she has concerning the offense. But she misunderstands the record. While the Government did say that Gonzalez-Carmona failed to provide any information they weren't already aware of, this was not what the district court relied on in denying safety valve relief. The court found her evidence lacking and her explanations unpersuasive. Because the record supports this finding, we affirm the district court's denial of safety valve relief eligibility.

## IV.

Finally, Gonzalez-Carmona argues that the district court erred by denying her a sentence reduction for being a minor participant under U.S.S.G. § 3B1.2. But even if the district court did err, any error was harmless. The district court gave Gonzalez-Carmona the lowest sentence it could—120 months, the mandatory minimum. Because that minimum is above the calculated Guidelines range of 87 to 108 months, any reduction in the Guidelines wouldn't have resulted in a lower sentence. *See United States v. Leanos*, 827 F.3d 1167, 1170 (8th Cir. 2016).

## V.

We affirm the district court's denial of the motion to suppress and its denial of safety valve relief.

_____