# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1967
_____

United States of America

*Plaintiff - Appellee*

v.

Charles Hamber

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: November 22, 2024
Filed: February 5, 2025
_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Charles Hamber was convicted by a jury of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) following the discovery of a pistol on his person during a traffic stop. He now appeals, arguing that the

district court[1] should have suppressed the pistol as it was recovered as a result of an unlawful stop under Terry v. Ohio, 392 U.S. 1 (1968). Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On January 30, 2021, St. Louis County police officer William Ware[2] was on patrol in Jennings, Missouri. Around 2:06 a.m., he received a call from dispatch for a welfare check at a gas station in an area known for "heavy narcotic use." Officer Ware was informed that a truck had been idling at a gas pump for over two hours, despite the gas station closing at midnight. Upon arrival, Officer Ware located a tan Chevrolet Silverado parked and running with its headlights on at a gas pump. The truck also had an open-bed trailer attached to it which contained construction tools and materials. Officer Ware approached the vehicle, used a flashlight to peer inside, and located an individual "passed out" in the driver's seat. After Officer Ware knocked on the window, the individual awoke and identified himself as Hamber. Officer Ware directed Hamber to turn off the vehicle and began asking him questions. Aside from appearing "as if he had just been w[o]ken up," Hamber responded appropriately to Officer Ware's questions and told him that he "probably" was asleep because he had been "working all day, since 5:30 in the morning." Officer Ware asked if there were any firearms in the car, and Hamber said no. Hamber then handed Officer Ware his driver's license, and Officer Ware went back to his vehicle to run a license check.

---

[1]The Honorable Matthew T. Schelp, United States District Judge for the Eastern District of Missouri, adopting the report and recommendations of the Honorable Stephen R. Welby, United States Magistrate Judge for the Eastern District of Missouri.

[2]Ware is now a United States Postal Inspector. For purposes of this opinion, we will refer to him as Officer Ware.

In running the license, Officer Ware learned that Hamber "potential[ly] . . . was a convicted felon." Officer Ware then returned to Hamber's truck and asked him to step out of the vehicle "to see whether he was able to drive or not," as Hamber was still "part of an ongoing investigation." Hamber complied; Officer Ware then directed him to the back of the truck and asked if he had any weapons on him. Hamber informed him that he had a knife. Officer Ware asked Hamber, "[d]o you mind if I search you then real quick?" Hamber asked Officer Ware to repeat the question then answered, "[d]o what you gotta do." Officer Ware proceeded to pat down Hamber, finding not only the knife but also a loaded pistol. Officer Ware seized the pistol and knife and placed Hamber in handcuffs while he contacted the St. Louis County records center, which confirmed Hamber was a convicted felon. Officer Ware then placed Hamber under arrest.

Hamber moved to suppress the pistol, claiming it was obtained during a warrantless pat-down search conducted without his voluntary consent in violation of his Fourth Amendment rights, citing Terry. After a hearing, the magistrate judge issued a report and recommendation recommending that the district court deny the motion because Officer Ware had reasonable suspicion to search Hamber under Terry and Hamber had voluntarily consented to the pat down search that revealed the pistol. The district court adopted the report and recommendation in full, and Hamber was ultimately convicted following a jury trial. Hamber now appeals.

II.

Hamber appeals the denial of his motion to suppress but concedes that Officer Ware had probable cause for the initial stop and does not challenge the district court's determination that he voluntarily consented to the pat-down search. Therefore, the only issue on appeal is whether Officer Ware impermissibly extended the stop in violation of Hamber's Fourth Amendment rights after initially speaking with Hamber, running his license, and determining the license was valid. "We review the district court's legal conclusions *de novo* and its factual findings for clear error." United States v. Horton, 611 F.3d 936, 940 (8th Cir. 2010).

"The Fourth Amendment protects against unreasonable searches and seizures." United States v. Allen, 43 F.4th 901, 907 (8th Cir. 2022). Traffic stops are reasonable seizures if they are "supported by either reasonable suspicion or probable cause." United States v. Soderman, 983 F.3d 369, 374 (8th Cir. 2020). After a lawful stop has occurred, such as in this case, "an officer may order the occupants to leave their car as a matter of course." United States v. Gonzalez-Carmona, 35 F.4th 636, 641 (8th Cir. 2022). Here, Hamber does not dispute the initial stop; he argues instead that Officer Ware impermissibly extended that stop beyond what was necessary to achieve its objective. "A constitutionally permissible traffic stop becomes unlawful when its length exceeds the time needed to attend to the stop's 'mission' and 'related safety concerns.'" Soderman, 983 F.3d at 374 (quoting Rodriguez v. United States, 575 U.S. 348, 354 (2015)). Officers do not impermissibly extend a stop by taking actions to "ensur[e] that vehicles on the road are operated safely and responsibly," Rodriguez, 575 U.S. at 355, which includes "complet[ing] tasks related to the stop, such as checking the vehicle's registration and insurance, checking the occupants' names and criminal histories, preparing the citation, and asking routine questions." Allen, 43 F.4th at 907. It is only when an officer extends the stop beyond completion of tasks related to the stop that he must do so on the basis of "reasonable suspicion of criminal activity." Id.

Hamber argues that Officer Ware impermissibly extended the stop by ordering him out of his vehicle after running his license, and that, under the totality of the circumstances, Officer Ware did not have the required reasonable suspicion of criminal activity to extend the stop. In his view, the initial stop concluded once Officer Ware determined his license was valid. We disagree. Officer Ware had an objectively reasonable suspicion that Hamber was unfit to drive sufficient to extend his investigation under Terry. Officer Ware discovered Hamber asleep at the wheel of his running vehicle at a gas station in an area known for "heavy narcotic use" around 2:06 a.m., two hours after the gas station had closed. It is also worth noting that Hamber was discovered because of a request for a welfare check. While Hamber responded appropriately when questioned, it was objectively reasonable for Officer Ware to ask Hamber to step out of the vehicle to confirm that Hamber (1) was not

-4-

under the influence of any drugs or alcohol and (2) could safely operate the vehicle and not injure a member of the public in doing so. The entire purpose of the stop was to address safety-related concerns, and Officer Ware ordering Hamber out of his vehicle to assess whether he could drive was directly and "reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Cummins, 920 F.2d 498, 502 (8th Cir. 1990) (citation omitted). Ordering Hamber out of the car was within the scope of the initial stop, which did not conclude until after Hamber consented to the pat-down search and Officer Ware discovered the pistol.

Hamber argues Officer Ware continued to question him solely because Officer Ware thought he was a convicted felon, and any other reason is pure pretext. This argument is without merit. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis," a much higher bar than the reasonable suspicion required under Terry. See Whren v. United States, 517 U.S. 806, 813 (1996); United States v. Arciniega, 569 F.3d 394, 397 (8th Cir. 2009) ("Once an officer has probable cause, 'the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant.'" (citation omitted)). Hamber concedes that Officer Ware had probable cause supporting the initial stop, and we have already determined that the initial stop did not end until after Hamber consented to the pat-down search. Thus, Hamber's pretext argument fails.

III.

For the foregoing reasons, we conclude that the district court did not err in denying the motion to suppress. Accordingly, we affirm the judgment of the district court.

_____