# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3954

_____

United States of America

*Plaintiff - Appellee*

v.

Alex Olin Johnson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Southern

_____

Submitted: May 13, 2022
Filed: February 12, 2026

_____

Before ERICKSON, STRAS, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

After the district court denied his motion to suppress, Alex Johnson pleaded guilty to conspiring to distribute a controlled substance, 21 U.S.C. §§ 841(a)(1), 846. He argues on appeal that the court should have suppressed evidence that the police found after unreasonably prolonging a traffic stop. We agree, so we reverse and remand.

## I.

While investigating a multi-state drug trafficking operation, the South Dakota Division of Criminal Investigation asked Officer Stevens to pull over a car that was leaving a surveilled apartment building. He stopped the car on a nearby residential street for excessive window tint.

The driver, Alex Johnson, told Officer Stevens that his license was suspended, and Officer Stevens had Johnson get out and join him in his patrol car. By the six-minute mark in the dash camera video, dispatch confirmed the suspended license. Officer Stevens told Johnson that he would get a ticket for driving without a license but only a warning for excessive window tint because the car belonged to his brother. He also said that they needed to wait for an officer with a working window tint meter so that he could get a reading for his report. While the two waited, Officer Stevens had all the information and time he needed to complete the ticket for driving without a license—a task that usually takes five to six minutes. But he did not do so.

The other officer arrived and took a meter reading 14 minutes and 42 seconds into the stop. At that point, Officer Stevens also had everything he needed to complete the warning. But instead, realizing that a K9 unit wasn't on the way, he radioed for one and talked shop with the other officer.

After the other officer left, Officer Stevens printed the ticket for driving without a license. But he didn't give it to Johnson. He chatted with him about unrelated topics. Eventually, about 18 minutes into the stop, Johnson asked if he should call someone to come get the car, and Officer Stevens said, "Here's the deal. When we're done, I'm gonna take off, and I'll just trust that you'll get that taken care of the right way." Officer Stevens later testified that he was working on the window tint warning and waiting for the K9 to arrive.

Officer Westrum arrived with his K9 21 minutes and 24 seconds into the stop. After a few laps around the car, the K9 alerted. Only then did Officer Stevens give

Johnson the ticket and warning. Officer Westrum told Johnson that he would search the car. Johnson asked if he should call someone to get his dog, who was inside. Officer Stevens started to say yes, but Officer Westrum interrupted, saying there was no reason to if there wasn't anything incriminating. Johnson took the dog out of the car, and Officer Westrum started his search.

About ten minutes later, Johnson again asked if he should call someone to get his dog. Officer Stevens said that he should. A few minutes after that, Officer Stevens asked if "somebody that can drive the car" was on the way, but corrected himself, "at least [somebody that can] take the dog." Johnson said that there was, and asked if he should have someone come get the car. Officer Stevens wasn't sure and went to ask Officer Westrum. But while Officer Stevens and Johnson were talking, Officer Westrum found drug paraphernalia and methamphetamine, so they arrested Johnson. After the search, an officer backed up the car a few feet and left it parked on the residential street with the key inside so that Johnson's brother could get it later.

Based on the evidence from the car, the police secured a search warrant for Johnson's apartment and found more drugs. The Government charged him with conspiring to distribute a controlled substance, 21 U.S.C. §§ 841(a)(1), 846, and he moved to suppress the evidence from both the car and his apartment.

The district court denied his motion. It found that Officer Stevens would have completed and explained the ticket and warning by the 20 minute, 42 second mark if he had been reasonably diligent. But relying on *United States v. Soderman*, 983 F.3d 369 (8th Cir. 2020), it held that Officer Stevens lawfully prolonged the stop to address the safety concern posed by Johnson's legal inability to drive the car away. It also held that the evidence from his apartment was admissible since it wasn't the fruit of a poisonous tree. Johnson then pleaded guilty, reserving his right to appeal the denial of his motion to suppress.

II.

We review the denial of a motion to suppress *de novo* and any underlying factual determinations for clear error, "giving 'due weight' to the inferences of the district court and law enforcement officials." *United States v. Robbins*, 682 F.3d 1111, 1115 (8th Cir. 2012) (citations omitted).

A traffic stop is a seizure under the Fourth Amendment, so it "must be supported by either reasonable suspicion or probable cause." *Soderman*, 983 F.3d at 374. A stop that is lawful at the start still violates the Fourth Amendment "if it lasts longer than necessary to effectuate its mission—to address the traffic violation that warranted the stop and attend to related safety concerns." *United States v. Navarette*, 996 F.3d 870, 874 (8th Cir. 2021) (cleaned up) (quoting *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)). "Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop," like "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 575 U.S. at 355 (cleaned up) (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)).

Officers must be "reasonably diligent" and should act "expeditiously" in carrying out these tasks. *Id.* at 357. When complications arise, they "may reasonably detain a driver for a longer duration than when a stop is strictly routine," *United States v. Olivera–Mendez*, 484 F.3d 505, 510 (8th Cir. 2007), but they must take care "to limit any subsequent detention or search," *United States v. Peralez*, 526 F.3d 1115, 1120 (8th Cir. 2008) (citation omitted). Without reasonable suspicion of separate criminal behavior, they "may not conduct unrelated checks that extend the stop beyond the time reasonably required to complete its original mission." *Soderman*, 983 F.3d at 374. A K9 sniff is an unrelated check. *Rodriguez*, 575 U.S. at 356.

Officer Stevens prolonged the stop beyond the time needed to address Johnson's traffic violations. *Cf. Peralez*, 526 F.3d at 1120 (officer's "drug interdiction questions," interspersed with "routine processing of a traffic stop," unreasonably prolonged the stop). In his own words, it normally takes him five or six minutes to complete and explain a traffic ticket. So if he had diligently written the window tint warning, he would have completed it by 20 minutes and 42 seconds into the stop at the latest and Johnson would have been free to go before Officer Westrum and the K9 arrived.

The Government nonetheless argues that a longer stop was needed to "attend to related safety concerns." *Rodriguez*, 575 U.S. at 354. Relying on *Soderman*, it says that Officer Stevens's "discovery that [Johnson's] license had been suspended justifiably extended the lawful scope of the traffic stop because of [his] legal inability to remove the vehicle from the scene and the consequential need for a licensed driver or a tow truck to do so." 983 F.3d at 374.

In *Soderman*, we held that officers lawfully prolonged a stop to fulfill the "community caretaking function" of ensuring that a vehicle dangerously positioned on the road was safely removed by a tow truck or licensed driver. *Id.* Not only did the car pose a safety risk because it was on the shoulder of a turn in the road, but there was also a tow truck on the way to remove it when one of the officers conducted the drug investigation. *Id.* at 373–74. Similarly, in *United States v. Ovando-Garzo*, we held that an officer lawfully prolonged a stop "to engage in a community caretaking function of safely moving the vehicle and its occupants from the side of the road" after he arrested the only licensed driver "five miles from the nearest town in freezing temperatures." 752 F.3d 1161, 1164 (8th Cir. 2014). The "circumstances" required the officer to engage in a community caretaking function, and the questioning that prolonged the stop "was necessary to accomplish" that task. *Id.*

The circumstances that justify prolonging a stop for community caretaking are absent here.[1] Granted, Johnson's license was suspended, so he could not drive away. And a reasonable officer may have been justified in fulfilling the community caretaking function of waiting for a licensed driver or tow truck to arrive to make sure that Johnson didn't get behind the wheel. But there is no indication in the record that the officers were engaging in that function. No one was ever called to move the car. There is no evidence that there was even a plan to call someone. And Officer Steven told Johnson to take care of the car after the stop. Because no one was asked to come for the car, no one did. After the search was over, the officers left the car where it was with the key inside. There is no evidence showing that the "length of the stop was directly related to [a] community caretaking function." *Soderman*, 983 F.3d at 374; *see also Ovando–Garzo*, 752 F.3d at 1164 (the questioning that prolonged the stop "was necessary to accomplish" the "community caretaking function of safely moving the vehicle and its occupants from the side of the road").

The stop was unreasonably prolonged, so the evidence from the car should have been suppressed.[2] *See United States v. Davis*, 760 F.3d 901, 903 (8th Cir.

---

[1]We pass no judgment on whether Officer Stevens's subjective intent to leave Johnson with the car and trust that he would properly remove it plays any role in our analysis. The objective facts show that the officers did not engage in community caretaking. *See Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) ("An action is reasonable under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify the action." (cleaned up) (citation omitted)).

[2]The Government conceded at oral argument that it did not rely on the inevitable discovery doctrine before the district court and did not "specifically" mention it in its brief. But it suggested that an inevitable discovery argument is "inherent" in its community caretaking argument. It is well-settled that a "litigant may not advert perfunctorily to an argument, hoping that we will do its work for it by developing the argument and putting flesh on its bones." *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 324 (8th Cir. 2018). Nor does the Government argue that the exclusionary rule should not apply to this constitutional violation. *See United States v. Riesselman*, 646 F.3d 1072, 1079 (8th Cir. 2011).

-6-

2014). And because the evidence from the apartment is the fruit of that constitutional violation, it should have been suppressed too. *See United States v. Swope*, 542 F.3d 609, 613–14 (8th Cir. 2008) ("The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree." (cleaned up) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984))).

III.

We reverse the district court's denial of Johnson's motion to suppress, vacate his conviction, and remand for further proceedings.

STRAS, Circuit Judge, dissenting.

The real question here is whether a *reasonable* officer can detain a car when the driver has a suspended license. The court concludes that the answer is no. I disagree.

Consider the facts. Officer Stevens had just pulled Johnson over. And, as far as he knew, no one was coming to get him or the car. It would have been *reasonable* to stick around to make sure Johnson did not get back behind the wheel, which could expose others to danger. *See United States v. Soderman*, 983 F.3d 369, 374 (8th Cir. 2020) (explaining that "complications [that] arise" during a traffic stop can justify "detain[ing] [the] driver . . . longer" (citation omitted)); *see also Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (recognizing that keeping unlicensed drivers off the road helps "ensur[e] that vehicles . . . are operated safely and responsibly"). Except Officer Stevens had a different motive for detaining him: he suspected there were drugs in the vehicle and was waiting for a trained canine to confirm his suspicions. *See Rodriguez*, 575 U.S. at 354–55 (acknowledging "that the Fourth Amendment tolerate[s]" dog sniffs "during . . . otherwise lawful traffic stop[s]").

Turns out that the Fourth Amendment does not care about an officer's actual motive. *See Whren v. United States*, 517 U.S. 806, 813 (1996) (explaining that officers need "not have the state of mind which is hypothecated by the reasons which provide the legal justification for [their] action[s]" (citation omitted)). Under the objective-reasonableness standard, what counts is "*what* [he] in fact d[id]," not *why*. *Rodriguez*, 575 U.S. at 357 (emphasis added); *see United States v. Demilia*, 771 F.3d 1051, 1055 (8th Cir. 2014) (reviewing whether a traffic stop was "objective[ly] . . . justifi[ed]"). An officer can take "certain actions"—like detaining an unlicensed driver—"in certain circumstances . . . *whatever* the subjective intent." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citation omitted); *cf. id.* at 154 (emphasizing that "an arrest under a given set of known facts" is either constitutional or not, regardless of "whether the arresting officer . . . correctly identifies" the justification for it).

And here, a reasonable officer could act exactly as Officer Stevens did. Even if *Johnson* should have been free to walk away, as the court concludes, a reasonable officer had every reason to stay with *the car* and make sure that he did not try to drive it home. *See United States v. Lillich*, 6 F.4th 869, 878–79 (8th Cir. 2021) (explaining that "detention of [the defendant's] person had nothing to do with the car remaining stationary" when he "legally was unable to drive it"). At least until another driver or a tow truck showed up to retrieve it. Until then, it was just "a car parked on a public street" subject to a dog sniff. *United States v. $409,905.00 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir. 1999) (explaining that it is not a search in those circumstances); *see Florida v. Jardines*, 569 U.S. 1, 11 (2013) (distinguishing cars from homes).

It is true that Officer Stevens misled Johnson about the reason for the delay. But the Fourth Amendment is concerned with "reasonableness," not candor. *Devenpeck*, 543 U.S. at 153 (citation omitted). So I agree with the district court that there was no reason to suppress the drugs and other incriminating evidence found in Johnson's trunk. *See Soderman*, 983 F.3d at 374; *Lillich*, 6 F.4th at 878.

_____